Finch v. Ullman.

FINCH *et al.*, *Appellants*, v. ULLMAN.

DIVISION TWO.

1. **Corporation De Facto, Conveyance by or to.** A conveyance to or by a corporation *de facto* can be assailed, on the ground of lack of corporate existence, only by the state.

2. **Ejectment:** COMMON GRANTOR : EVIDENCE. A common source of title can be shown in ejectment by parol evidence, nor is it necessary to show the title of the common grantor to be the legal one.

3. **Coterminous Proprietors:** POSSESSION : TRUE LINE. The possession of coterminous proprietors under a mistake or in ignorance of the true line, and without intending to claim beyond the latter, will not work a disseizin in favor of either.

4. **Practice :** PRIMA FACIE CASE. Where plaintiff's evidence shows a *prima facie* right of recovery, it is error to sustain a demurrer to his evidence.

*Appeal from Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

REVERSED AND REMANDED.

*B. U. Massey* and *Ethelbert Ward* for appellants.

(1) If the plaintiff shows prior possession as owner either in himself or his grantor, if it appears that defendants hold under the same grantor, it is unnecessary to go further as to proof of title. *Miller v. Hardin*, 64 Mo. 545 ; *Smith v. Lindsey*, 89 Mo. 76 ; *Cummings v. Powell*, 97 Mo. 524; *Charles v. Patch*, 87 Mo. 450. (2) The Springfield Hotel Company was a corporation *de facto ;* because, *first*, there was at the time in Missouri a general law under which such a corporation might have been formed, and, *second*, an attempt to form a corporation, and an actual performance of corporate acts, pursuant to the general law.

2 Morawetz, Priv. Corp. [2 Ed.] secs. 777 and 778; Wait Insolv. Corp., secs. 483 and 485; *Thompson v. Candor*, 60 Ill. 244. (3) The validity of the transfer of property by or to a corporation *de facto* cannot be questioned in a collateral proceeding. 2 Morawetz Priv. Corp. [2 Ed.] secs. 753, 707, 710, 711; Wait, Insolv. Corp., sec. 22; *Society Perun v. Cleveland*, 43 Ohio St. 481; *Hutson v. Green Hall Sem.*, 113 Ill. 618; *Thompson v. Candor*, 60 Ill. 244; *Hovelman v. Railroad*, 79 Mo. 639. (4) This rule is not based on estoppel which governs many of the Missouri cases, but on the requirements of public policy that the security of titles be not impaired. 2 Morawetz, Priv. Corp. [2 Ed.] secs. 692, 652 and 678. (5) The deed of the Springfield Hotel Company to Sheppard, trustee, dated September 6, 1871, recorded in book 1, page 327, was properly signed and acknowledged, and conveyed the interest of said company to said trustee. *Shewalter v. Pirner*, 55 Mo. 218; *City of Kansas v. Railroad*, 77 Mo. 180; *Eppright v. Nickerson*, 78 Mo. 486. (6) "Parol evidence may be resorted to to identify the land as existing on the ground, in cases where its location is called in question." *Orr v. How*, 55 Mo. 329; *Charles v. Patch*, 87 Mo. 467, and the authorities there cited. "The question whether the deed under which plaintiff claimed covered the strip in controversy was held to be one of fact for the jury." *Barry v. Otto*, 56 Mo. 177. The testimony of Youngblood, McAfee, Delaney and Ferguson was proper evidence to go to the jury to determine the original plat of the town of Springfield. Stephens' Dig. Ev. [2 Am. Ed.] secs. 65 and 67; 1 Green. Ev. [14 Ed.] sec. 509, p. 601; Wood's Prac. Ev., sec. 6, p. 11, *et seq*. The plat exhibits A, B, C and D were proper evidence tending to locate the land sued for. *Brewington v. Jenkins*, 85 Mo. 57. (7) Defendants claimed the eighteen-inch strip by adverse possession alone. An actual possession of the lot to the east of this strip does not carry constructive possession of this strip when the

defendants do not claim any deed title to the strip. *Fugate v. Pierce*, 49 Mo. 441; *Leper v. Barker*, 68 Mo. 403. Where premises are vacant constructive possession will follow the true title. *Crispen v. Hannavan*, 50 Mo. 536, and authorities there cited. Possession under mistake of lines will not work a disseizin in favor of the one so possessed. *Houx v. Batteen*, 68 Mo. 84; *Tamm v. Kellogg*, 49 Mo. 118; *Kincaid v. Dormey*, 51 Mo. 551; *West v. Railroad*, 59 Mo. 510. The mere fact that the next door groceryman piled trash and old boxes and barrels on the vacant lot of Ullman, and that some of the salt barrels at one time were piled against the hotel wall, and that at one time a circus bill board was erected across the empty lot and rested its ends for support against the sides of the hotel and the grocery store, does not constitute adverse possession in law of this eighteen-inch strip of ground. *Turner v. Hall*, 60 Mo. 275; *Crispen v. Hannavan*, 50 Mo. 536; *Fugate v. Pierce*, 49 Mo. 441; *Musick v. Barney*, 49 Mo. 474; *Campbell v. Gas Co.*, 84 Mo. 374; *Key v. Jennings*, 66 Mo. 367. (9) "A demurrer to evidence admits everything which the testimony conduces to prove, even though only in a slight degree; and, in passing upon the demurrer, the court will make every inference of fact in favor of the party offering the evidence which the evidence warrants, and which the jury might, with any degree of propriety, have inferred." *Wilson v. Board*, 63 Mo. 137; *Buesching v. Gas Co.*, 73 Mo. 219; *Noeninger v. Vogt*, 88 Mo. 589; *Fisher v. Railroad*, 23 Mo. App. 201. "But the court is not at liberty to make inferences of fact in favor of the demurrant, to countervail or overthrow either presumptions of law or inferences of fact in favor of the other party; that would be clearly usurping the province of the jury." *Buesching v. Gas Co.*, 73 Mo. 231; *Feurt v. Brown*, 23 Mo. App. 332. "To authorize or render permissible such an instruction, the evidence must not be merely weak, but

in fact there must be no evidence." *Routsong v. Railroad*, 45 Mo. 237. "If there is any evidence, however slight it may be, or whether direct or inferential, it must go to the jury, who are the sole judges of its weight and authority." *Charles v. Patch*, 87 Mo. 463 ; 1 Pat. Mo. Dig., secs. 67, 68, 77, 78, p. 322 ; 2 Stark's Mo. Dig., sec. 307, p. 237. "The right of trial by jury as heretofore enjoyed shall remain inviolate." Const. Mo., art. 22, sec. 28.

*Goode & Cravens* and *H. E. Howell* for respondent.

(1) The corporate existence of a corporation in this state dates from the filing of a copy of the articles of association or corporation with the secretary of state, and, there being no evidence that the Springfield Hotel Company ever so filed a copy of its articles of association, it has never had a corporate existence, and could not be a legal grantor or grantee in a deed, and the deeds in evidence to it and from it passed no title and are void. *Hurt v. Salisbury*, 55 Mo. 311 ; *Richardson v. Pitts*. 71 Mo. 128 ; *Mining Co. v. Richards*, 95 Mo. 106 ; *Douthitt v. Stinson*, 63 Mo. 268; "Corporations," 4 Am. & Eng. Encyc. of Law, par. 8, p. 107 ; Morawetz on Corp. [2 Ed.] sec. 746 ; *Gent v. Ins. Co.*, 107 Ill. 652 ; 6 Am. & Eng. Corp. Cas. 588. The filing with the secretary of state was a prerequisite to corporate existence. *Smith v. Warden*, 86 Mo. 382. The Springfield Hotel Company was neither *de facto* nor *de jure* a corporation. Something more is necessary to make even a *de facto* corporation than a body of men getting together and calling themselves a company. *Hart v. Salisbury*, 55 Mo. 310; *Mfg. Co. v. Richmond*, 14 Mo. App. 595 ; *Railroad v. Abell*, 17 Mo. App. 645 ; *Gent v. Ins. Co.*, 107 Ill 652 ; 6 Am. & Eng. Corp. Cas. 588. (2) The quitclaim deed of Dade to Crenshaw, dated August 17, 1872, passed no title, as there is no evidence of any title in Dade, and it passed no possession or right of possession, as Dade was not in possession at the

Finch v. Ullman.

date of said deed (see admission at the end of bill of exceptions), but had abandoned his possession when he made his deed to the Springfield Hotel Company, dated March 28, 1870, and so said deed to Crenshaw cannot aid plaintiffs in this case. *Matney v. Graham*, 59 Mo. 190; *Fellows v. Wise*, 49 Mo. 350; *Bledsoe v. Sims*, 53 Mo. 305; *Hunt v. Railroad*, 75 Mo. 252; *Prior v. Scott*, 87 Mo. 303. It devolved upon the plaintiffs to show that Dade had not abandoned his possession when he made the deed to Crenshaw. *Alexander v. Campbell*, 74 Mo. 142. When a plaintiff relies on his title, deduced from a common source, and does not introduce evidence to show such common source ever held the title, and when the evidence also shows that the alleged common source was not in possession of the premises at the time he made the conveyance under which plaintiffs claim, the plaintiffs have not made out a case. *Matney v. Graham*, 59 Mo. 190; *Fellows v. Wise*, 49 Mo. 350; *Bledsoe v. Sims*, 53 Mo. 305; *Hunt v. Railroad*, 75 Mo. 252; *Prior v. Scott*, 87 Mo. 303. (3) The plaintiffs must recover on the strength of their own title, and there can be no common source of title when the answer is a general denial and defendant claims title under the statute of limitation. *Foster v. Evans*, 51 Mo. 39; *Charles v. Patch*, 87 Mo. 450; *Prior v. Scott*, 87 Mo. 303; *Miller v. Hardin*, 64 Mo. 545. Even the rule as to plaintiff recovering on prior possession under claim of title is limited to mere intruders or trespassers. *Prior v. Scott*, 87 Mo. 309. (4) While the identification of the land was a question of fact for the jury, yet whether there was any competent evidence to prove it, was for the court to determine on the demurrer to the evidence. The pretended copies of plats in evidence cannot establish a "legal plat or record." *Brewington v. Jenkins*, 85 Mo. 57.

THOMAS, J.—This is an action in ejectment for a strip of land in lots 31 and 34, block 2, of the city of

Springfield, fronting eighteen and three-fourths inches on College street, and running back two hundred and thirty-five feet. The petition is in the usual form, and the answer is a general denial. Judgment went against plaintiffs, and they appeal.

Plaintiffs read in evidence deeds as follows: *First*, a deed from D. C. Dade to the Springfield Hotel Company, dated March 26, 1870, conveying to it a strip of land off the west side of said lots 31 and 34, fronting one hundred and twenty feet on said College street, and running back to the south line of said lot 34. *Second*. A deed of trust executed by the Springfield Hotel Company, dated September 6, 1871, conveying the same property to Charles Sheppard, trustee, to secure the payment of the sum of $18,000 to the *cestui que trust* named therein. *Third*. A deed from Sheppard, trustee, under said deed of trust, dated September 9, 1872, conveying the same property to Crenshaw, Keet, Doling, Robertson and Jones. *Fourth*. Intermediate deeds from these parties down to plaintiffs.

Plaintiffs also read in evidence articles of incorporation of the Springfield Hotel Company, dated March 4, 1870, which conformed in every particular to the requirements of sections 1 and 2, of article 8, of chapter 37, Wagner's Statutes of Missouri, but no certificate from the secretary of state declaring this company a corporation was shown. By these articles of incorporation a board of directors of the company was appointed to manage its concerns.

The evidence tended to show further that a hotel, known as the Metropolitan, was erected on this property, the eastern wall of which was built eighteen and three-fourths inches west from the eastern line thereof.

On April 5, 1870, said Dade conveyed to Jones, Ullman and Robertson, a strip of land in said lots fronting twenty feet on said College street, and running back to the south line of said lot 34, and adjoining the

property conveyed to the hotel company on the east. In 1877, this strip of twenty feet was sold in partition to Ludwig Ullman, one of the defendants in this case. This constituted the title of defendants. The conveyance of Dade to Jones, Ullman and Robertson, and the partition sale to Ullman were proved by parol without objection. It appears from the evidence that Dade, and those under whom he claimed title, had had possession of said lots 31 and 34, from 1853 to the time of the conveyances of 1870 to the hotel company and to Jones, Ullman and Robertson; that the hotel company and its grantees have had possession of the property conveyed by Dade to said company ever since 1870.

As to the possession of the strip of twenty feet, Ullman, being called as a witness by plaintiffs, testified as follows:

By defendants: "*Q.* I will ask you if you were not in possession of that same ground that Mr. Massey asked you about more than ten years before the commencement of this suit in March 28, 1887? *A.* Oh, yes; I was.

"*Q.* If you were in possession of that ground continuously from March 1, 1887? *A.* I was in possession.

"*Q.* And claiming it as your own? *A.* My own; yes, sir."

By plaintiffs: "*Q.* How were you in possession? *A.* I owned the house and lot. I bought it. We bought it from Mr. Dade, and I controlled it for the others, for Mr. Jones, who owned one-third, and Mr. Robertson, who owned one-third, and I controlled it for them, and a sale took place by partition, and I bought it under that sale.

"*Q.* How many feet did you buy? *A.* Twenty feet. I bought between the hotel and Mr. Dade's lot, where Mr. Ford is now.

"*Q.* How many feet is there between the hotel and Mr. Dade's lot? *A.* I believe there is twenty-one feet.

"*Q.* At the time you bought that lot at the partition sale what was there on the lot? *A.* There was a signboard across the whole lot.

"*Q.* Was there anything else on the lot? *A.* There were some boxes there, and some old wagons, and some salt barrels against the hotel side. There was a house on the back part of the alley, two hundred and thirty-five feet from the front. The bill board reached from the wall of Dade's building to the hotel wall, and remained there continuously till I began to build in 1882 or 1883.

"*Q.* Have you lived here continuously since 1877? *A.* No, I moved to Cleveland, Ohio, in 1881, and lived there six years.

"*Q.* How do you know that bill board was up there all the time? *A.* I came here once or twice, sometimes two or three times a year, and I saw it there.

"*Q.* Are you positive now that that bill board stood there all the time? *A.* Yes."

By defendants: "*Q.* Did Mr. Dorsey build a platform across there in the spring of 1882 for agricultural implements? *A.* Yes.

"*Q.* Ain't you mistaken about it remaining there until you commenced to build? Wasn't it torn down when the platform was put there? *A.* Yes, sir."

It is not proven in so many words, but the inference from the evidence is, that defendant Ullman took actual possession of the strip of eighteen and three-fourths inches of land in 1882 or 1883 when he commenced to build on his property. Defendant Ullman also testified that he never heard of plaintiff's claim to the disputed strip till he built his house. This is substantially the evidence as presented by the plaintiffs, and upon that the court instructed the jury that under the pleadings and evidence the plaintiffs could not recover, and this presents the only question for decision.

In support of the ruling of the trial court defendants urged that plaintiffs failed to show title to the

strip of land in dispute: *First*, by failing to show title in Dade; *second*, by failing to show that the Springfield Hotel Company was a duly incorporated company, and, *third*, by showing that defendants had acquired the title to it by adverse possession.

*Per contra*, the plaintiffs contend that the corporate existence of the hotel company and the deeds to and from it cannot be called in question in this collateral proceeding; that as both parties claim title to the land from Dade, a common source, they were not required to show title in him, and the evidence does not show that defendants had acquired the title by adverse possession.

I.    Section 1 of article 8, chapter 37, Wagner's Statutes of Missouri, authorized the incorporation of a hotel company, and the company in question having been formed *de facto* and having assumed to act, and having acted as a corporation *de facto*, its corporate existence cannot be called in question or tested in a collateral proceeding like this.    2 Morawetz on Priv. Cor., secs. 776-7-8; *G. M. & S. Co. v. Richards*, 95 Mo. 106. And it is well settled that a transfer of property to or by a corporation *de facto* will be held binding and valid as against all parties except the state.    2 Morawetz on Priv. Cor., sec. 753; *Thompson v. Candor*, 60 Ill. 244; *Hudson v. Corporation*, 113 Ill. 618; Wait on Ins. Cor., sec. 22.

II.    The contention of defendants that plaintiffs were required to show title in Dade in order to recover in this case is not tenable.    Defendant Ullman testified that he claimed title to the property by and through Dade.    It is true, the fact that he claimed through Dade was shown by parol, but in the first place there was no objection to this mode of proof, and, in the second place, if there had been, it ought to have been overruled; for it was expressly ruled in the case of *Smith v. Lindsey*, 89 Mo. 76, that a common source of title may be shown by parol.    It being shown that both

parties derived title from the same person, plaintiffs were not required to show title in him.

III. This brings us to the question of the statute of limitations. This is evidently a contest between coterminous proprietors as to the boundary line between them. Plaintiffs' evidence tended to show that the conveyance by Dade to the hotel company in March, 1870, covered the disputed strip of land, and that while defendant Ullman did not pretend he had bought more than twenty-feet frontage on College street, he had at the time of trial possession of, and claimed title to, at least twenty-one feet. The evidence is indefinite in regard to his possession of the disputed strip. We take it, however, that there was evidence that prior to 1882, there were bill boards on defendants' land extending to the hotel building. Whether these bill boards were there ten years prior to the institution of this action does not clearly appear. In 1882, Dorsey, by permission of defendants, built a platform for agricultural implements. This "platform extended up against the hotel building." When this was put up the bill boards were taken down. In 1882 or 1883, defendant Ullman built a house on his property and then unquestionably took actual possession of the disputed strip of land. If the trial court sustained the demurrer to the evidence because it was proved that defendants had acquired title to the property in controversy by adverse possession, it committed error.

We deem the evidence of defendants' possession of the disputed strip very weak, indeed, and beyond any controversy it was not so cogent that the court could, as a matter of law, declare to the jury, defendants had acquired the title by adverse possession, for if the demurrer to the evidence was sustained on this ground, that is what the court had to do. And, again, there was *no evidence* that defendants intended to claim, or did claim, beyond their *true line.* "The possession of coterminous proprietors under a mistake or ignorance of

the true line, and without intending to claim beyond the true line, will not work a disseizin in favor of either." *Crawford v. Ahrnes,* 103 Mo. 88. Plaintiffs' evidence showed a *prima facie* right of recovery, and the court erred in sustaining a demurrer to it.

The judgment is reversed and the cause remanded. All of this division concur.