GILKEY, Respondent, vs. THE TOWN OF HOW and another, Appellants.

*November 8 — December 15, 1899.*

*Towns* de facto *and* de jure: *Organization: Town orders: Pleading: Devolution of liability.*

1. From the complaint in an action brought to recover on certain town orders it appeared, among other things, that acting under secs. 670, 671, Stats. 1898, which authorized the county board, within its county, to change the boundaries of towns and organize new towns therein, such board of Oconto county, by ordinance, detached certain territory from the defendant towns and organized therefrom the town of W., which, by a proceeding in the circuit court for that county, was dissolved, and such ordinance held null and void. The town orders in question were duly issued after the town of W. had organized, elected officers, and levied its taxes. After the dissolution of the town of W. the defendant towns resumed ownership, possession, and control over the territory detached from each. *Held,* on demurrer to the complaint, that, there being a valid law under which the town of W. might have been lawfully incorporated, and an attempt, in good faith, to comply with the requirements of such law, followed by its organization and entering upon the transaction of business, the town of W. became a *de facto* town, even though there might have been a failure to comply with the law in some particular which prevented it from becoming a town *de jure.*

2. The vacation of the ordinance creating the town of W. by the circuit court for Oconto county in direct proceedings for that purpose being subsequent to the issuing of such orders, the obligation to pay the same devolved on the defendant towns.

APPEAL from an order of the circuit court for Oconto county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

For the appellants there was a brief by *Wigman & Martin,* and oral argument by *P. H. Martin.*

For the respondent there was a brief by *Webster & Classon,* and oral argument by *D. G. Classon.*

CASSODAY, C. J. This is an appeal from an order overruling a demurrer to the complaint, alleging, in effect, that the

defendants, the towns of *How* and *Armstrong*, had for more than two years been duly organized and existing as towns in Oconto county; that November 28, 1894, the county board of supervisors of that county adopted an ordinance whereby certain sections of lands described were detached and set off from the town of *Armstrong*, and a government township of land, described, was detached and set off from the town of *How*, and all of such territory so detached from such towns, respectively, was by such ordinance erected and created into a new town, called the town of Waupee; that, after the passage and publication of that ordinance, the people of such town of Waupee proceeded to elect the town board and other town officers, and to levy taxes to supply the different funds of that town, as provided by law, and the town board so elected by the people duly issued town orders to carry on the business of that town; that the plaintiff was and is the owner and holder of town orders issued by such town of Waupee during its existence to the amount of $308.88, which orders have never been paid, nor any part thereof; that January 17, 1896, the circuit court, in a proceeding brought for that purpose, set aside the organization of the town of Waupee, and held the ordinance creating such town to be null and void, and dissolved the organization of such town; that thereafter the town of *How* resumed ownership, possession, and control of the territory so detached from it, and that the valuation of such territory was $52,080, by the assessment of 1895, and the town of *Armstrong* resumed possession, ownership, and control of the territory so detached from it, and that the valuation of such territory was, by the assessment of 1895, $36,265; that the valuation of all the territory contained in the town of Waupee during its existence was, by the assessment roll of 1895, $88,445; that, by reason of the facts alleged, the town of *Armstrong* became indebted to the plaintiff on such orders in the sum of $181.89, as its proportionate share thereof, and

that the town of *How* became indebted to the plaintiff on such orders in the sum of $126.99, as its proportionate share thereof; that March 14, 1898, the plaintiff duly filed with the town clerks of the towns of *Armstrong* and *How*, to be brought before the town board of audit of each of such towns at its meeting in the spring of that year, his claim or demand for the amount due from each of such towns, and for the amount due from both of such towns jointly as above set forth, which claim was verified by the affidavit of the plaintiff, but that such claim or demand was not acted upon by the town boards of audit of such towns, or either of them, or by the electors at the annual meeting of such towns for 1898, or, if acted upon, was not allowed by the board of audit, or by the electors at such town meeting, and that such sum has not been paid by such town or towns, or any part thereof; that more than ten days had elapsed between the annual town meeting of the towns in 1898 and the commencement of this action. Judgment was demanded against the defendants for $308.88, together with interest thereon and costs and disbursements herein, and that the court might specify by its judgment the amount each of such towns should pay.

The only question presented by the demurrer is whether the complaint states facts sufficient to constitute a cause of action. The statutes authorized the county board of supervisors of Oconto county to divide, set off, organize, vacate, and change the boundaries of towns in that county in the manner therein prescribed. Secs. 670, 671, Stats. 1898. Counsel for the defendants contend, in effect, that such statutes are mandatory; and that, since the complaint fails to allege that every requirement of such statutes was substantially complied with, the county board got no jurisdiction, and hence that the adoption, passage, and publication of the ordinance, the organization of the new town, the election of a town board and other town officers, the levy of taxes, and

the issuing of the town orders in question, as alleged, were each and all null and void, the same as though no attempt had ever been made to create such new town. In reaching such conclusion, counsel seem to rely upon *Smith v. Sherry*, 50 Wis. 210; *S. C.* 54 Wis. 114. That was an action for a trespass to lands and the removal of pine timber therefrom, brought by a tax-title claimant under a tax deed based upon a sale for the nonpayment of taxes assessed upon the land, in 1872, by the town of Seneca. Upon the first trial of that action the defense tendered was that, prior to such assess- ment, the lands described in the tax deed had been detached from the town of Seneca, and attached to the village of Shawano, by ch. 92, P. & L. Laws of 1872, and that the taxes for that year had been assessed and levied thereon by that village, and paid to that village, and hence that the plaintiff's tax deed was void; and the trial court so found; but under a stipulation of the parties, and at the request of that court, the defendant refrained from going into his whole defense until this court should determine the consti- tutionality of ch. 92, mentioned. Thereupon this court re- versed the judgment, and held that act to be unconstitu- tional, as special legislation, and hence that the lands were never attached to the village of Shawano. 50 Wis. 210. The cause, having been remanded, was retried in accord- ance with the stipulation, and the defenses relied upon were to the effect that the lands described in the tax deed never became a part of the town of Seneca, but were at the time such taxes were assessed a part of the town of Herman; that the only attempt to attach the same to the town of Seneca was by an unpublished order of the county board, passed March 29, 1872, on motion of a member of the board, that the town embracing the lands described in the tax deed "be attached to the town of Seneca for town purposes;" and, as a further defense, that the defendant was in the actual possession of each of the forties covered by the tax

deed, so as to stop the running of the statutes of limitations in favor of the plaintiff, and bar his claim of title. The trial court held in favor of the defendant on both defenses, and this court affirmed the judgment. 54 Wis. 114. It was there held, in effect, that such mere order of the county board, passed on motion but never published, did not give the town of Seneca authority, nor color of authority, to put the taxing power of the town in motion. It will be observed that in that case the attempt was to detach territory from one *de jure* town, and attach the same to another *de jure* town, on simple motion, entered in the minutes of the board in the form of an order, and never published; and it was, in effect, held that the question whether such territory was so attached to the town of Seneca was properly determinable in that action between private parties, although that question was not specifically argued nor determined. But the questioned here presented was not otherwise involved in that case.

The questions here are whether the facts alleged were sufficient to constitute the town of Waupee a *de facto* corporation at the time of issuing the town orders in question, and, if so, whether the defendants can properly question its right to do so in this private action. Wherever there is a valid law under which a corporation with the powers assumed might have been lawfully incorporated, and there is an attempt, apparently in good faith, to comply with the requirements of such law, and the corporation thus attempted to be created is organized and enters upon the transaction of business, its existence as a *de facto* corporation is established, even though it has failed to comply with the law in some particular which prevents it from being a corporation *de jure*. *Stout v. Zulick*, 48 N. J. Law, 601; *M. E. Union Church v. Pickett*, 19 N. Y. 482; *Bank of Toledo v. International Bank*, 21 N. Y. 542; *Lancaster v. Amsterdam I. Co.* 140 N. Y. 584; *Larned v. Beal*, 65 N. H. 184; *Society Perun v. Cleve-*

46        SUPREME COURT OF WISCONSIN.        [105

Gilkey vs. The Town of How and another.

*land,* 43 Ohio St. 481; *Spring Valley Water Works v: San Francisco,* 22 Cal. 434; *Haas v. Bank of Commerce,* 41 Neb. 754; *Am. S. Co. v. Heidenheimer,* 80 Tex. 344; *S. C.* 26 Am. St. Rep. 743; *McTighe v. Macon C. Co.* 94 Ga. 306; *S. C.* 32 L. R. A. 208, and cases there cited. But where there is no law authorizing a particular corporation *de jure* there can be no such corporation *de facto. Evenson v. Ellingson,* 67 Wis. 634; *Schriber v. Langlade,* 66 Wis. 616; *McTighe v. Macon C. Co., supra.* So there are cases holding, in effect, that where there is, apparently, no attempt in good faith to comply with certain substantial requirements of the law authorizing such incorporation,— nothing sufficient to give color to the incorporation,— the body attempted to be incorporated will not be regarded as a corporation *de facto. First Nat. Bank v. Davies,* 43 Iowa, 424; *Doyle v. Mizner,* 42 Mich. 332; *Garnett v. Richardson,* 35 Ark. 144; *Indianapolis F. & M. Co. v. Herkimer,* 46 Ind. 142; *Abbott v. Omaha S. & R. Co.* 4 Neb. 416; *Childs v. Hurd,* 32 W. Va. 66; *Jones v. Aspen H. Co.* 21 Colo. 263; *S. C.* 29 L. R. A. 143. See, also, *Bergeron v. Hobbs,* 96 Wis. 641. So, it is well settled that the corporate existence of a corporation *de facto* cannot be inquired into collaterally, but may be inquired into by direct proceeding on the part of the state. *Stout v. Zulick,* 48 N. J. Law, 599; *Cochran v. Arnold,* 58 Pa. St. 399; *Hamilton v. C., M. & P. R. Co.* 144 Pa. St. 35; *Catholic Church v. Tobbein,* 82 Mo. 418; *Fredericktown v. Fox,* 84 Mo. 59; *State v. Fuller,* 96 Mo. 165; *Finch v. Ullman,* 105 Mo. 255; *Saunders v. Farmer,* 62 N. H. 572; *Society Perun v. Cleveland, supra; People v. La Rue,* 67 Cal. 526; *Atchison, T. & S. F. R. Co. v. Sumner Co. Comm'rs,* 51 Kan. 617; *Haas v. Bank of Commerce, supra; Crowder v. Sullivan,* 128 Ind. 486; *McTighe v. Macon C. Co., supra.* So it has been held by this court that "the validity of an ordinance of a county board purporting to organize or set off a new town, or to change the boundaries of existing towns, may be determined by the circuit

court on *certiorari.*" *State ex rel. Graef v. Forest Co.* 74 Wis. 610–619. That decision was made in pursuance of a statute enacted the year after *Smith v. Sherry,* 54 Wis. 114, was decided, and a short time after *Sherry v. Gilmore,* 58 Wis. 324, was determined in the trial court. That statute expressly authorizes the validity of such order or ordinance to be tested by "*certiorari* or any other proper proceeding brought directly" for that purpose in the manner prescribed, " within two years after the date of such order, ordinance, or proceeding." Sec. 671, Stats. 1898. Under that statute it has been held by this court that the order or ordinance of the county board changing the boundaries of a town could not be questioned in a collateral proceeding, except when made without authority of law. *Schriber v. Langlade,* 66 Wis. 616. But, as indicated by the authorities cited, the statute forbidding such collateral attack, and authorizing such direct attack, is simply confirmatory of the common law, except in so far as it limited the time within which such direct attack could be made. Thus, in the recent case of *Shapleigh v. San Angelo,* 167 U. S. 646, the city of San Angelo was not at first incorporated according to law, and while it existed only as a *de facto* corporation it issued street improvement bonds. Subsequently, and in a direct proceeding brought in behalf of the state, the corporation was adjudged to be dissolved and null and void. Afterwards the city was incorporated, embracing the same territory as the old corporation. In an action upon the bonds so issued by the *de facto* corporation, against the new corporation, it was held that the latter was liable, and that the disincorporation by such legal proceeding did not avoid legally subsisting contracts made by the *de facto* corporation.

That decision seems to be directly in point, quite similar in its facts, and unanswerable in its logic. It is true that the statute cited also declares that "no such order, ordinance or proceeding shall in any wise be called in question in any

action or proceeding except one brought directly for that purpose within the time herein limited, *unless* such order, ordinance or proceeding *shall have been vacated* by a court of competent jurisdiction." Sec. 671, Stats. 1898. True, the complaint alleges that, after the issuing of the town orders here sought to be collected, the circuit court, in a direct proceeding for that purpose, dissolved the town of Waupee, and held that the ordinance creating the same was null and void; yet since it appears, from the facts alleged, that, at the time of issuing such orders, the town of Waupee was a *de facto* corporation, it follows, from the case cited, that the obligation to pay such orders devolves upon the defendants, since the territory embraced in the *de facto* town of Waupee was taken in part from the town of *Armstrong* and the balance from the town of *How.*

*By the Court.*— The order of the circuit court is affirmed.