SMITH, *Plaintiff in Error*, v. CATLIN LAND AND IMPROVEMENT COMPANY.

Division One, July 3, 1893.

1. **Conveyances**: EVIDENCE. Where several deeds are made at the same time and refer to each for boundaries of the land conveyed, they will be read as one instrument.

2. ——: DISTANCES: MONUMENTS. Distances mentioned in a conveyance will yield to monuments, and this is true where the calls are for boundaries of adjoining owners.

*Error to St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*Henry H. Denison* for plaintiff in error.

(1) The recitals and descriptions in the deeds of Marie Louise Chouteau Papin govern the boundaries and location. *Gillespie v. Sawyer*, 15 Neb. 536; *McAfferty v. Conover's Lessee*, 7 Ohio. St. 104; *Piercy v. Crandall*, 34 Cal. 343; *Jackson v. Wendell*, 5 Wend. 146; *Jackson v. Spraque*, 1 Payne, 494; *Powell v. Clark*, 5 Mass. 355; *Jackson v. Barringer*, 15 Johns. 471; *Mills v. Miller*, 4 Neb. 444. (2) The possession of one tenant in common is the possession of all, and the statute of limitations does not run in favor of such possession. Neither can a grantor set up, against his own deed, a possession against his own grantee. 1 Washburn on

Real Property, p. 689: 2 Herman on Estoppel, pp. 741–743; *Wade v. Lindsay*, 6 Met. 407; *Lamb v. Clark*, 5 Pick. 193; *Somes v. Skinner*, 3 Pick. 52; *Schwallbach v. Railroad*, 69 Wis. 292; Freeman on Cotenancy and Partition, sec. 221.

*Lee, McKeighan, Ellis & Priest* for defendant in error.

(1) The deed of Hypolite Prouhet and wife to Robert Forsyth, dated March 11, 1851, by the express clause in it, conveys everything Hypolite Prouhet owned between Robert Forsyth, the grantee, on the south and James W. Kingsbury on the north. Distance description must give way to boundary description by adjacent owners. The latter is the more certain and less liable to mistake. *Whittelsey v. Kellogg*, 28 Mo. 404. (2) The parties to the foregoing deed of March 11, 1851, so construed the deed as between themselves, and the court will put the same construction on it that the parties did. *Evans v. Green*, 21 Mo. 170. (3) The plea of the statute of limitations is a bar to this action. Robert Forsyth took and had open and notorious and exclusive possession of the strip of land in question, and it was so held by him for twenty-three years after the deed was made, and up to the death of Robert Forsyth, in 1873, and by his trustee and their grantees up to the commencement of the suit. *Smith v. McCorkle*, 105 Mo. 135.

BLACK, P. J.—This is an action of ejectment for the undivided one-half of the following parcel of land: Beginning in the east line of survey 378 at a point eighty-two chains and twenty-nine links southerly from the northeast corner of said survey, thence westerly on a line parallel with the north line of said survey one

hundred and thirteen chains to the Skinker road, thence north one hundred and thirty-seven feet, four and one-half inches, thence easterly parallel to north line of said survey one hundred and thirteen chains to the east line thereof, thence south one hundred and thirty-seven feet four and one-half inches to beginning.

Marie Louise Papin acquired the entire survey by a patent from the United States dated in 1823. The survey was supposed to be forty arpens north and south and eighty arpens east and west, but it proved to be two hundred and thirteen feet and eight inches in excess of forty arpens from north to south.

On June 6, 1807, Marie Louise Papin and her husband conveyed to Marie P. Leduc a part of the survey, that is to say, two and one-half arpens in width by eighty arpens in length, along the south line of the survey. Thereafter and on the twenty-fourth of August, 1808, Marie Louise Papin and her husband executed twelve deeds, all of the same date; one to Marie P. Leduc, their son-in-law. This deed describes the land thereby conveyed as "two arpents and a half in front by eighty arpents in depth, or two hundred arpents in superficies, adjoining on the north side the land of Pierre Chouteau, on the south his own land," and by other words it is located in the before mentioned survey. Another of these deeds is to Pierre Chouteau and conveys "ten arpents in front by eighty arpents in depth, or eight hundred arpents in superficies, bounded on the north by Emilie Papin, our daughter, south by Marie P. Leduc." The other ten deeds are to the children of the grantors, and each deed conveys a parcel of two and a half by eighty arpens. The north and south boundaries are designated by naming the owners of land on the north and south as in the deed last mentioned, except the deed to Joseph Papin, which for its north boundary calls for the north line of the survey.

The land in suit is a part of the ten by eighty arpens conveyed to Chouteau.

On the twenty-ninth of August, 1808, Chouteau conveyed the ten by eighty arpens to Emilie Papin. This deed has a condition therein to the effect that, if Emilie should marry then the land thereby conveyed should be divided between herself and her brothers and sisters. The deed provides further, that the grantee is to have possession after the death of her father and mother. Emilie married Chauvin, so that the land conveyed to her by Chouteau became the property of herself and her brothers and sisters in equal parts.

Alexander Papin and Pierre M. Papin acquired the north half of the ten by eighty arpens from their brothers and sisters by a deed dated the seventh of August, 1820. On the twenty-second of June, 1831, they conveyed the north half of the five by eighty arpens, so purchased by them, to Stanislaus Prouhet, and Agnes, his wife. This deed describes the property conveyed as "a tract of land containing two arpens and a half running north and south by eighty arpens running east and west, or two hundred arpens * * * bounded as follows: north and east by lands of John P. Cabanne; south by lands of Pierre M. Papin, * * * being the just half moiety to be taken from the northern part of the tract of four hundred arpens of land which said Alexander and Pierre M. Papin purchased from" their brothers and sisters. And, on the fifth of June, 1833, said Alexander and Pierre M. Papin conveyed the south half of the five arpens in width to Robert Forsyth by the following description: "two hundred arpens, being two arpens and a half wide running north and south, by eighty arpens running east and west, * * * bounded * * * south by lands of Thomas Forsyth, * * * north by lands of Stanislaus Prouhet, being part of a tract of land of a

larger quantity which the said" grantors purchased of their brothers and sisters.

In explanation of the calls in the two deeds last mentioned, it may be stated that, John P. Cabanne had acquired the two and one-half by eighty arpen tract next north of the Chouteau ten by eighty arpen tract; and Thomas Forsyth had acquired the south half of the ten by eighty arpen tract by deed from the Papin children. At a subsequent date Thomas conveyed this south half of the ten by eighty arpens to Robert Forsyth.

As has been said, Stanislaus Prouhet acquired the two and one-half by eighty arpens on the north side of the Chouteau ten by eighty arpens, by deed, dated the twenty-second of June, 1831. On the thirtieth of December, 1837, he and his wife conveyed this two and one-half by eighty arpens to their children, Theodore, Joseph, Hypolite and Virginia. By this deed the grantors reserve to themselves a life estate. Hypolite and Virginia became the owners of all that part thereof which lies east of the Skinker road. Virginia conveyed her undivided half to Robert Forsyth on the twenty-first of October, 1850.

Both parties claim title under Hypolite Prouhet. On the eleventh of March, 1851, he and his wife conveyed his undivided half to Robert Forsyth, describing the land conveyed as grant, bargain and sell all their estate, right, title and interest of, in and to, a tract of "one hundred and fifty arpens, more or less, containing two and one-half arpens north to south by sixty arpens to east and west, bounded west by land of Theodore Prouhet, south by Robert Forsyth; east by Charles P. Cabanne, and north by James W. Kingsbury, the interest hereby intended to be conveyed being equal to seventy-five arpens, more or less, and said tract of one hundred and fifty arpens being east-

ern part of larger tract conveyed to said Hypolite Prouhet *et al.*, book 12, p. 32, by Stanislaus Prouhet." The defendant holds by mesne conveyance under this deed. At the date of the last mentioned deed Kingsbury had become the owner of the land on the north.

The plaintiff claims under a deed to himself, dated in 1889, executed by the administrator of the estate of Hypolite Prouhet, in which the land is described the same as in the petition in this case. The plaintiff caused the administrator's sale to be made with a view of purchasing the property and prosecuting this suit.

1. It will be seen that both parties claim under Hypolite Prouhet, the plaintiff by the deed dated eleventh of March, 1851, and the defendant by the administrator's deed dated in 1889. According to the face of the deeds from Marie Louise Papin and her husband to their children, it is twenty-five arpens from the northeast corner of the survey south to the northeast corner of the ten by eighty arpen tract conveyed to Chouteau, and the northeast corner of the Chouteau tract is also the northeast corner of the land owned by Hypolite Prouhet. And it would be twenty-seven and one-half arpens, or five thousand, two hundred and ninety-three feet and nine inches, to the south line of the Hypolite Prouhet two and one-half arpen tract. The administrator's deed to the plaintiff describes a strip of land one hundred and thirty-seven feet, four and one-half inches in width south of the five thousand, two hundred and ninety-three feet and nine inch line, just mentioned, and this is the one hundred and thirty-seven feet in dispute. As has been said, the east line of the survey has a surplus over forty arpens of two hundred and thirteen feet, eight inches. The plaintiff says in his abstract, "the ten by eighty arpen tract contained the surplus." To this proposition we do not agree, and for these reasons: Mrs. Marie Louise

Papin executed the twelve deeds at the same time. The deed to Marie P. Leduc, for the south line of the property thereby conveyed, calls for the south line of that part of the survey not before sold; and for the north line it calls for the Chouteau ten by eighty arpens. The deed to Joseph Papin, for the north boundary of the land thereby conveyed, calls for the north line of the survey, and for the south boundary it calls for the land of Hypolite Papin. The other ten deeds describe the land conveyed by reference to other of the deeds executed at the same time. Thus the deed to Alexander Papin calls for two and one-half by eighty arpens bounded on the north by land of Didier Papin, and on the south by land of Emilie Papin. In fixing the exact location of any one of the twelve parcels, we have no more right to commence at one corner of the survey than we have to commence at the other. As the deeds were all made at the same time and refer to each other for boundaries on the north and south they must be read together as if one instrument; and taking them together it clearly appears the grantors intended to convey all the land they then owned in the survey. It is a well settled rule that distances must yield to monuments, and this is true where the calls are for boundaries of adjoining owners. *Whittelsey v. Kellogg*, 28 Mo. 404. The calls at the east and west ends of the several parcels for ten arpens in one case and two and one-half arpens in the other cases must, therefore, be extended so as to reach the boundaries called for. These deeds show a manifest purpose to divide up the balance of the survey owned by the grantors, among their children and Chouteau, who doubtless took in trust for Emilie, and this intention should prevail. The surplus of two hundred and thirteen feet and eight inches should, in strict right,

have been divided among the several grantees according to the quantity specified in their respective deeds.

2. The evidence shows that after the twelve deeds were executed by Mrs. Marie Louise Papin and her husband, the respective grantees took possession of their respective parcels. Each included in his possession some of the surplus, but some got more than others. An equal division among the grantees of Mrs. Papin would have resulted in giving Hypolite Prouhet eight to twelve feet in width more than he had in his possession. But we do not see how that can help the plaintiff. By the deed dated the eleventh of March, 1851, Hypolite Prouhet conveyed to Robert Forsyth the undivided half of one hundred and fifty arpens "more or less, containing two and one-half arpens north and south by sixty arpens east and west" bounded south "by Robert Forsyth" and north "by James W. Kingsbury." These calls would go to the true lines on the north and south though the distance should be something over two and one-half arpens. It is evident that he intended to convey all the land he owned between Kingsbury and Forsyth, whether more or less than two and one-half arpens in width. After this deed had been delivered he had nothing left. It follows that the plaintiff acquired nothing by his deed from the administrator of the estate of Hypolite Prouhet. Having acquired nothing by that deed, the question of side boundaries does not concern him; and he must fail in this suit.

3. On September 10, 1849, Stanislaus Prouhet, James W. Kingsbury and Robert Forsyth agreed, in writing, upon a division line between Kingsbury on the north and Stanislaus Prouhet on the south. The plaintiff objects to this deed because Stanislaus Prouhet then had but a life estate in the property, and his acts could not bind Hypolite Prouhet. And on October 12,

1850, Hypolite Prouhet and Robert Forsyth, in writing, established the line between them. These boundary line deeds fixed the lines according to the prior possession of the parties or nearly so. As to the effect of these deeds see *Smith v. McCorkle*, 105 Mo. 135. It is not essential to say more of them, because, as we have said, Hypolite Prouhet conveyed all the interest he had in the land, so that plaintiff got nothing whatever by his administrator's deed. He is here without a shadow of title, and hence had nothing to do with these side boundary lines. The judgment is affirmed. BARCLAY, J., not sitting. The other judges concur.