SIMPSON, *Appellant*, v. WABASH RAILROAD COMPANY.

### Division One, June 22, 1898.

1. **Ejectment:** SERVIENT ESTATE: DAM: NATURAL FLOW OF WATER: EXCEPTION. Ordinarily the owner of the servient estate can not erect a dam on his estate and thereby interrupt the natural flow of the surface waters and cause them to stand on the dominant estate. But that principle has no application to a case where the owner of the servient estate has constructed no artificial obstruction to the natural flow of the water, nor to one where the purpose of a license to an easement in the dominant estate was to cause water to stand on that estate. If in such case the owner of the servient estate so constructs a dam as to confine the surface water to the dominant estate, the owner of the dominant estate would have no claim against him.

2. ———: DESCRIPTION OF LAND: MONUMENTS: HARMONIZING CALLS. The order of applying descriptions of boundaries contained in deeds, licenses, etc., is, *first*, to natural objects; *second*, to artificial marks; *third*, to courses and distances. So that where a license to a railroad company "to flood any portion of a tract of land containing seven acres in lots 9, 10 and 11 lying immediately west of Florissant road" for a pond, the railroad company agreeing to construct a dam "the center line and direction of which are to be the center line of January avenue and to be 718 feet distant from the center of Florissant road measured westerly," and a survey shows that the distance to the extreme western limit of said lots is 694.88 feet and that said lots actually contained 13.14 acres, it is *held* that a point in January avenue 718 feet distant from the center line of Florissant road, is not a monument, it being neither a natural object, nor an artificial mark, but simply a call in the description which must be construed in connection with the other calls.

3. ———: LICENSE BY OWNER OF EQUITY OF REDEMPTION. A licensor granted a railroad an easement to use seven acres of lots 9, 10 and 11 for a pond. and after giving a deed of trust on these lots and lot 13, he sold his equity of redemption therein and the grantee of this executed a new license by which he granted to the same licensee an easement in lot 13. *Held*, that the purchaser at the sale under the deed of trust could hold the possession of lot 13 as against the subsequent purchaser of the equity of redemption.

4. ———: PRIORITY OF INSTRUMENTS: DATES AND ACKNOWLEDGMENT. A deed of trust acknowledged and recorded before a deed of a prior date, from the same grantor, takes precedence over such deed.

5. ———: LIMITATIONS: ADVERSE POSSESSION OF SERVIENT ESTATE. The fact, that, in the enjoyment by the licensee of an easement of a pond in a dominant estate, water naturally and necessarily flowed onto and stood upon the servient estate, must be regarded as one of the burdens which the servient estate had to bear resulting from the enjoyment by the licensee of his easement in the dominant estate, and not that the licensee by the fact that his pond extended over a part of such servient estate acquired an adverse possession and claim thereto.

6. ———: TRESPASS: ADVERSE POSSESSION: PROTEST. An instruction in an ejectment suit to the effect that the owner of a lot could not recover if he failed to protest against the flooding of his land by the defendant (through which means defendant sought to establish an easement right therein), is erroneous.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

*Noble & Shields* and *Mills & Grant* for appellant.

(1) The natural configuration of the premises in question, and of the land adjacent thereto, was immaterial and not pertinent to the questions at issue, and testimony thereto should not have been admitted over plaintiff's objection. (2) Particular descriptions in a deed prevail over general, and nothing passes by a deed that is not described in it. 1 Jones' "Law of Real Property in Conveyancing," secs. 325 and 410; *Grandly v. Casey*, 93 Mo. 595; *Railroad v. Greene*, 68 Mo. 169. (3) The second of the two instructions given at the request of the defendant ignores the time prescribed as a bar by the statute of limitation of actions, and authorizes a verdict for defendant on the ground of adverse user, without reference to the question whether or not such adverse user had been enjoyed for the period prescribed by the statute as a bar, to wit, ten years. *Bunten v. Railroad*, 50 Mo. App. 414; *McGowan v. Railroad*, 23 Mo. App. 203; *James v. Kansas*

*City*, 83 Mo. 567; R. S. 1889, sec. 6764. (4) The period of prescription, where a right to flood land of another is claimed from adverse user, must be reckoned from the time the land in question was flooded, *not* from the time the work which ultimately caused the flooding was begun. Washburn "On Easements," p. 167; *Benton v. Railroad*, 50 Mo. App. 414; *Culver v. Railroad*, 38 Mo. App. 138. (5) The user, to give rise to a prescriptive right, must be under a claim of right, if not against all the world, at least against plaintiff and his predecessors in title, and can not be a user exercised under a mistake as to its character. *Adkins v. Tomlinson*, 121 Mo. 487; *McWilliams v. Samuel*, 123 Mo. 659; *Kunze v. Evans*, 107 Mo. 494; *Crawford v. Ahrens*, 103 Mo. 88; *Finch v. Ullman*, 105 Mo. 255; *Milling Co. v. Riley*, 133 Mo. 586. (6) Purchasing a license from the party to whose rights the flooding is claimed to have been adverse, and paying $2,000 therefor, is the highest recognition of the rights of such party. *Lovell v. Frost*, 44 Cal. 474; *Railroad v. Mead*, 63 Cal. 112; *Ins. Co. v. Stroup*, 63 Cal. 150; *Jackson v. Britton*, 4 Wend. (N. Y.) 507; *Jackson v. Croy*, 12 Johns. (N. Y.) 427; *Davies v. Collins*, 43 Fed. Rep. 33; *Koons v. Steele*, 19 Pa. St. 203. (7) The date of acknowledgment is *prima facie* that of execution. *Johnson v. Moore*, 28 Mich. 3; *Eaton v. Trowbridge*, 38 Mich. 454; *Clark v. Akers*, 16 Kan. 166; *Gorman v. Stanton*, 5 Mo. App. 585; *Buck v. Gage*, 27 Neb. 306; R. S. 1889, sec. 2420.

*Geo. S. Grover* for respondent.

(1) The license of 1883 was broad enough in terms to cover lot 13. *West v. Bretelle*, 115 Mo. 653. (2) The easement or servitude in favor of defendant created by the license of 1883 was a covenant running

with the land which binds the owner thereof, including plaintiff. *Poage v. Railroad*, 24 Mo. App. 199; *Morgan v. Mason*, 20 Ohio, 401; *Underwood v. Carney*, 1 Cushing, 285; *Huttemeier v. Albro*, 18 N. Y. 48; Washburn on Easements and Servitudes, pp. 51, 76, 78, 81, 91; *Barry v. Edlavitch*, 35 Atl. Rep. 170; *Valentine v. Schricker*, 38 N. Y. Supp. 417. (3) The plaintiff's right of action is barred by the statute of limitations. *James v. Kansas City*, 83 Mo. 567; *Polly v. McCall*, 37 Ala. 30; *Bolivar v. Neponset Mfg.*, 16 Pick. 241; *Parker v. Foote*, 19 Wend. 309; *Hastings v. Livermore*, 7 Gray, 194; Washburn on Easements [4 Ed.], secs. 6 and 30. (4) The plaintiff, prior to his purchase under the mortgage of August 23, 1892, had both actual and constructive notice of defendant's easement in, as well as of its adverse possession of, lot 13, and therefore he was not, in any sense, an innocent purchaser. *Shumate v. Reavis*, 49 Mo. 333; *Branch v. Doane*, 17 Conn. 402; *Crosby v. Bessey*, 49 Me. 543.

MARSHALL, J.—The statement of this case, by counsel for appellant, is so clear, full and fair that we adopt it.

"This is an action of ejectment brought on the twenty-eighth day of June, 1894, to the May term, 1894, of the circuit court of St. Louis county. The petition is in the ordinary form, plaintiff claiming that he is entitled to possession of lot 13 in the town of Ferguson, formerly *Ashland*, and that defendant has unlawfully entered upon the same, and unlawfully withholds possession thereof from the plaintiff, to his damage, etc.

"The amended answer is, *first*, a general denial; *second*, a claim of open, notorious, adverse, hostile and continuous possession of the premises sued for for more than ten years prior to the institution of this suit;

and, *third*, that prior to the plaintiff's right of entry on the land sued for, if such right ever existed in favor of plaintiff, the defendant acquired by proper conveyances of record, from the then owners of said land, certain perpetual licenses to flood and overflow the whole or any portion of the tract of land here sued for, which said licenses are duly recorded, etc. The reply was a denial of the answer.

"The case was tried partly on an agreed statement of facts and the documentary evidence admitted thereunder, and partly on oral testimony. The material facts of the agreed statement, and of the instruments admitted in evidence thereunder, are as follows: That on the seventh day of July, 1883, George J. Plant and others executed and delivered to the Wabash, St. Louis & Pacific Railway Company, the predecessor in title of the defendant in this case, a perpetual license, which is recorded in full in book 24, page 151, of the records of St. Louis county, Missouri, and is, in substance, as follows: The grantor granted to the railroad company "a perpetual license to flood and overflow, at all times, the whole or any portion of the tract of land containing seven acres, more or less, lying and being in the town of Ashland (now known as Ferguson) in lots 9, 10 and 11, lying immediately west of the Florissant road and north of January avenue; the said tract of land is to embrace so much land as shall be covered by the water of the pond, the maximum top or surface line of which shall be level with the top of the paving in the waterway or wasteweir, to be established by the company, it being the true intent of this instrument to vest in the said party of the second part a license to overflow so much of the land of the parties of the first part as shall be flooded by raising the water to any stage not exceeding the limit of the acreage hereinbefore mentioned, except in case of flood, allowance

being made for temporary overflow;" the railroad company agreed "to maintain at all times a good and useful bridge, sixteen feet wide, with railing on each side, across the waterway or wasteweir, the center line and direction of said bridge, and of the dam to be constructed, being the center line of January avenue, and the center of the dam being 718 feet distant from the center of Florissant road measured westerly along the said line;" "it is further agreed that this instrument shall not be so construed as to pass the legal title to the land to be overflowed, as aforesaid, but that, subject to said license, the said title shall remain in the parties of the first part, their heirs and assigns." .

"That at the May term, 1887, of the circuit court of St. Louis county, a partition was had of the Plant estate, wherein the above mentioned lots, 9, 10 and 11, and also lot 12 and lot 13 (the lot here sued for) were allotted to George J. Plant. That after several intermediate conveyances of lots 9, 10, 11 and 13 (in some of which the above license is referred to and in some not, and when referred to, it is "a license to flood lots 9, 10 and 11"), the title to the said lots rested in Jos. G. Calkins, who, with his wife, on the twenty-third day of August, 1892, executed a deed of trust on said lots to secure an indebtedness of $12,000 to Nielander et al., which deed of trust was recorded September 2, 1892, in book 65, at page 52, of the records of St. Louis county, Missouri. That on the said twenty-third day of August, 1892, said Calkins and wife executed a second deed of trust on the said lots 9, 10, 11 and 13, to Niedlander et al., trustees, to secure notes for $3,000, which deed of trust was recorded on the first day of November, 1892, in book 65, at page 241, of the records of said county. That on the fifteenth day of September, 1892, Joseph G. Calkins and wife conveyed said lots, 9, 10, 11 and 13, to the Niedlander–Thomas Real

Estate Company, by deed recorded October 14, 1892, in book 65, at page 194, of the records of said county.

That on the eighteenth day of October, 1892, the Niedlander–Thomas Real Estate Company acknowledged, before a notary public, a license to the Wabash Railroad Company, which license was dated as of first day of August, 1892, and was recorded on the fourteenth day of November, 1892, in book 63, page 426, of said county; said last mentioned license was, except as to the land to be flooded and the description of the dam, which is omitted, substantially the same as the license of July 7, 1883, hereinabove mentioned; the land to be flooded being described in the license of 1892 as "the whole or any portion of a tract of land containing seven acres, more or less, lying and being in the town of Ashland, now known as Ferguson, in St. Louis county, Missouri, in lots number nine, ten, eleven and thirteen and such other lots and tracts of land adjoining thereto as are more particularly located and set out, described and shown in the tracing fully describing said lots, which is hereto annexed and made a part of this agreement; instead of as it was in the license of 1883, "the whole or any portion of a tract of land containing seven acres, more or less, lying and being in the town of Ashland, now known as Ferguson, in St. Louis county, Missouri, in lots number 9, 10 and 11, lying immediately west of the Florissant road and north of January avenue;" it was also provided in this second license, i. e., of 1892, that it should "supersede and stand in lieu of the agreement made July 7, 1883, by and between George J. Plant and others, parties of the first part, and the Wabash, St. Louis & Pacific Railway, party of the second part;" this license further recited that the defendant company paid $2,000 therefor. (This license, though dated August 1, 1892, was not acknowledged until October 18, 1892, and was

recorded on November 14, 1892, while the deed of trust, through which plaintiff claims, was executed on August 23, 1892, and recorded September 2, 1892.)

That plaintiff bought on October 21, 1892, lots 9, 10, 11 and 13, at public sale, under the deed of trust of August 23, 1892, first above mentioned, to wit, the one to secure the indebtedness of $12,000, and received a deed from the trusteee dated October 21, 1893. That plaintiff had previously bought the note for $3,000, secured by the deed of trust of August 23, 1892, second above mentioned, which was also prior in date to the execution of the license of 1892, and on finding the property advertised for sale under the first deed of trust, went out and looked at the property for the first time on the day before the sale, *i. e.*, on October 20, 1893, and did not know of the condition of the property prior to his inspection at that time.

"The oral testimony was, in substance, as follows:

"B. F. Devinney, witness for defendant, testified that he took certain photographs, offered in evidence, and that there was nothing to indicate the corners of the lots on the premises in question.

"Joseph Morrison, a civil engineer, a witness of defendant, testified that a point on January avenue, seven hundred and eighteen feet west from Florissant road, would be on, or opposite, lot 13; that the distance between Florissant road and the western line of lot nine is six hundred and ninety-four feet and a fraction; that the pond, as constructed, covered five and four tenth acres, and that, if the water was raised so as to flood seven and one half acres, most of the water would be on lot 13. The witness was asked, "What is the natural configuration of the ground of lots 9, 10 and 11?" An objection was made to the question as irrelevant; the court overruled the objection and plaintiff excepted. The witness then testified

that lots 9, 10 and 11 are higher than lot 13. On cross-examination, the witness stated that the dam was not constructed as the license of 1883 calls for, so as to have the center of the dam on the center line of January avenue; that the dam at the west end runs into January avenue, but the dam does not touch the center line of January avenue at any point; that the dam at the east end is two hundred and forty-four feet north of January avenue; that the traveled road is on the embankment of the dam, not on January avenue, as laid down on the plats.

"B. Henthorne, foreman of the water supply of the Wabash, a witness for defendant, testified that work was commenced on the pond in 1883, and it was not finished until a year or so afterward. Wm. Neitman, track foreman of the Wabash, a witness for defendant, testified that "they had not worked any to any extent; in the latter part of June, 1884, is when they went to work on it, did the grading on it;" that they did not draw any water before December, 1884, until the pond was filled with the fall rains. Ed. W. Owens, a witness for defendant, testified that he had lived in Ferguson about twelve or thirteen years; that the Ferguson pond was commenced about the latter part of June, 1884; that the bulk of the pond is where the ravine used to be; that the dam was completed in the latter part of December, 1884; that water was not drawn from the pond until some time in 1885, could not say exactly when.

"The court gave the following instruction at the request of the plaintiff: "The court, sitting as a jury, declares the law to be that when a pond of water is constructed artificially, the person who has a license to construct a pond upon certain lots has no right to perpetually flood other lots."

The court also gave the following instructions at

the request of the defendant: "The court instructs, that if the court, sitting as a jury, believe, and find from the evidence, that the flooding of lots 9, 10 and 11, provided for in the license of 1883, in evidence, of necessity flooded lot 13, the property in question also, and that the description of the lands mentioned in said license necessarily included lot 13, and that at the time of the issuing or execution of said license the grantors therein were the owners of all of said lots, including said lot 13, then the legal effect of said license was and is to grant the right to the licensee therein to flood said lot 13, the same as though it had been specifically named in said grant."

"The court instructs, that, if the court, sitting as a jury, find, from the evidence, that the defendant, or the Wabash, St. Louis & Pacific Railway Company, under authority of the license of 1883, read in evidence, and immediately or shortly after the execution of said license constructed the dam and pond mentioned in the evidence, and that in the construction and subsequent maintenance of said dam and pond, the property in question was flooded, and has so remained continuously until the bringing of this suit; and if the court, sitting as a jury, further find from the evidence that the flooding of said premises, as aforesaid, was known to the grantors in said license, down to the acquisition of title by the plaintiff herein, and that they either acquiesced therein, or failed to object to or protest against said flooding, then the plaintiff is not entitled to recover and the finding will be for the defendant."

The court refused the following instructions requested by the plaintiff:

"The court, sitting as a jury, declares the law to be that if the plaintiff purchased the note secured by the second deed of trust upon the lands in controversy

without the knowledge that the same was occupied by a pond, and subsequently, when the land was advertised under the first deed of trust, bought it under the first deed of trust, and for the first time saw the property only a day before the sale under the first deed of trust, that he is not estopped from asserting his claim to the property as an innocent purchaser, and that there is no evidence that parties lending money on either the first or second deed of trust had any knowledge of the condition of the property, or of its being occupied by the pond, and that plaintiff is entitled to every consideration as an innocent purchaser for value, which would operate in favor of the lenders of money on the first and second deeds of trust, and the court finds no evidence that the lenders on the first and second deeds of trust had any knowledge of the property outside of the record entries."

"The court, sitting as a jury, declares the law to be that the purchase by the defendant of Niederlander & Thomas of a right or license to flood lot No. 13 is inconsistent with and destructive to any claim on the part of defendant to have held any portion of lot No. 13 adversely to the true owner thereof, and that said negotiation and purchase is conclusive that their holding a portion of lot 13, occupied by the pond prior to the second license, was not hostile and in subjection to the rights of the owners of lot 13."

"The court, sitting as a jury, declares the law to be that defendant's claim of a right to flood the land under the first license can not be construed as an adverse or hostile possession, and that their rights in and to lot 13 can only be determined by a construction of the terms of the first grant; and the court declares the law to be that under the first license the defendant had only the right to flood 7 1-2 acres of lots 9, 10 and 11, and that the configuration of the land can not extend

the right to defendant to flood beyond the limits of lots 9, 10 and 11.''

"The court, sitting as a jury, declares the law to be that the purchaser of the note secured by deed of trust is not compelled to look beyond the record title, and that when a deed of trust is put on record prior to any license or conveyances affecting the land, that such deed of trust takes precedence of licenses and conveyances dating prior to the deed of trust, but not recorded prior to the deed of trust, and that there is no evidence that any notice was brought home to the lenders on the first deed of trust or to the purchaser of the notes secured by the second deed of trust, and that such purchaser of the notes under the second deed of trust is an innocent purchaser for value of all the title that existed according to the records at the time the first and second deeds of trust were made.''

The court thereupon rendered judgment for the defendant, and later overruled plaintiff's motion for a new trial, and plaintiff appeals.

Two main questions of law are thus presented for determination, *first*, did defendant's license of 1883 to flood lots 9, 10 and 11 carry with it the right to flood lot 13 also; and, *second*, is plaintiff's action barred by limitation?

I.   The defendant's license of 1883 authorized it "to flood and overflow, at all times, the whole or any portion of the tract of land containing seven acres, more or less, lying and being in the town of Ashland (now known as Ferguson), in lots 9, 10 and 11, lying immediately west of the Florissant road and north of January avenue; the said tract of land is to embrace so much land as shall be covered by the water of the pond, the maximum top or surface line of which shall be level with the top of the paving in the waterway or wasteweir, to be established by the company.''   The

license further required the defendant to construct a dam in January avenue, "the center of the dam being 718 feet distant from the center of Florissant road measured westerly along the said line." Lot 13 was not mentioned in this license. But defendant contends that as the natural configuration of lots 9, 10, 11 and 13 was such that lot 13 was several feet lower than lots 9, 10 and 11, the construction of the contemplated dam to form a pond on lots 9, 10 and 11, would necessarily flood a part of lot 13, and hence such an easement as to lot 13 was thereby granted, and further that the western boundary of lot 9 was only six hundred and ninety-four and ninety-eight hundreths feet from the center of Florissant avenue and the call in the license for the dam to be constructed in the center of January avenue, the center of the dam to be seven hundred and eighteen feet distant from the center line of Florissant avenue, threw this point west of the west line of lot 9, and opposite a part of lot 13, thereby establishing a monument which bounded defendant's easement and overcame the specific call as to lots 9, 10 and 11 in the license, and consequently enlarged defendant's easement so as to cover lot 13.

Lots 9, 10 and 11 contained in the aggregate thirteen and fourteen hundredths acres, of which the license authorized a pond covering seven acres, more or less, which left six and fourteen hundredths acres of those lots outside of the contemplated pond. Lot 13 contains twelve and five hundredths acres. Lots 9, 10 and 11 front on Florissant avenue, and are laid out from east to west. Lot 13 abuts the rear of lots 9, 10 and 11, and is laid out from north to south. The configuration of the land is such that the dam, as constructed, caused the pond to cover about one fourth of the area of lot 9, about one half of lot 10, and scarcely touched lot 11 at all, while nearly one half of the pond

was within the limits of lot 13. The dam was not constructed in conformity to the requirements of the license and it is not shown what, if any, difference it would have made as to the water on lot 13, if the license had been strictly observed, but in the view we take of the case this consideration is not material.

The license of 1883 authorized a pond covering seven acres, more or less, of the thirteen and fourteen hundredths acres, constituting lots 9, 10 and 11. It must be assumed that both the licensor and licensee knew, at the time the license was granted, that the construction of a pond on lots 9, 10 and 11 would cause water to stand on lot 13. Yet lot 13 was not mentioned in the license, and defendant was granted no easement as to it, unless it results from necessity; that is, unless the defendant could not possibly enjoy the privileges conferred by its license without interfering with the possession of lot 13. Under the terms of the license defendant is conceded to have the right to cover seven acres of lots 9, 10 and 11, with a pond, and if in so doing the water necessarily covered the whole of lot 13, the licensor or those in privity with him would have no claim against defendant. But this did not give defendant any right to the possession of any part of lot 13. The licensor or his grantee still owned lot 13, and although it was covered with water he had a right to the possession of that lot. Lot 13 was the servient estate, and lots 9, 10 and 11 the dominant estate, so far as the water was concerned, but because the former had to submit to the water coming from the latter, that fact gave the licensee of the latter no right, title, interest or estate in the former, under the circumstances of this case. Ordinarily the owner of the servient estate can not erect a dam on his estate and thereby interrupt the natural flow of the surface waters and cause them to stand on the dominant estate, but that principle has no applica-

tion to this case, for the reason that the owner of the servient estate here, has constructed no artificial obstruction to the natural flow of the water, and because the very purpose of the arrangement in this case was to cause water to stand on the dominant estate. If the licensor had constructed or his grantee should now construct a dam or levee along the east line of lot 13, and the west (or rear) lines of lots 9, 10 and 11, and thereby confine the waters to lots 9, 10 and 11 and keep them off of the lower ground in lot 13, or should fill up lot 13 so as to raise its surface above the level of the water authorized to be on lots 9, 10 and 11 by the construction of a pond on those lots, the licensee would have no claim whatever against the owner of lot 13 for so doing. No rights or privileges of the defendant under its license would be thereby interrupted or interfered with. It would have the effect, perhaps, of benefiting defendant, for it would confine the water to the lots contemplated by the license and increase the volume of water available to defendant, and it is water the defendant wanted, that too, water stored upon and obtained from lots 9, 10 and 11. It is not at all clear that if by reason of drought, the water standing on lots 9, 10 and 11, should be exhausted, the defendant, under its license, would have a right to go upon lot 13 and take water therefrom which had escaped from the higher ground of lots 9, 10 and 11. So it is not beyond conception that raising the grade of lot 13 might, under extreme conditions, be a benefit and not an injury to the licensee. The owner of lot 13 therefore has a right to the possession thereof, burdened by the water which naturally flows upon it from the higher ground on lots 9, 10 and 11, and increased by the maintenance of the authorized dam, which may, but is not clearly shown to be, more than would be the case if the dam had not been constructed. But, as above

pointed out, if the owner, at any time, deems it to his advantage to fill up lot 13 and thereby confine the waters to lots 9, 10 and 11, which now flow naturally from these lots onto lot 13, the defendant will not thereby be ousted from or injured in any of the rights conferred upon it by the license.

The doctrine of right of way or access to property by necessity has no application to this case. The sole question here involved is the right of possession of lot 13. If it is accorded to the owner of the fee, he will take it subject to the burdens nature has imposed upon it and subject to the increased amount of water on it caused by the construction of the pond on lots 9, 10 and 11 under the license of his grantor, and he may, as herein indicated, raise the grade of this lot so as to avoid this natural or artificial burden, without being liable to defendant for so doing. In either case the defendant will still have preserved to it all the rights and privileges granted to it by its license, with, perhaps, some additional benefits not naturally incident to the purposes sought to be obtained by the license.

The fact that the west line of lot 9 was six hundred and ninety-four and ninety-eight one hundredths feet from the center of Florissant avenue, and that the license required the dam to be constructed in January avenue, the center of the dam to be seven hundred and eighteen feet distant from the center of Florissant avenue, does not constitute the point in January avenue seven hundred and eighteen feet distant from the center line of Florissant avenue, a monument, reference to which overcomes the specific description of the premises contained in the license and thereby gives defendant a license to or easement in lot 13.

"The order of applying descriptions of boundaries, is, *first,* to natural objects; *second,* to artificial marks; *third,* to courses and distances." 3 Wash., Real Prop.

[4 Ed.] 405, cited and approved in *Whitehead v. Ragan*, 106 Mo. *l. c.* 236. But this rule does not sustain defendant's contention that the point in Florissant avenue was a monument. It is not a natural object, nor an artificial mark. It is a call in the license which must be construed in connection with the other calls. *Kronenberger v. Hoffner*, 44 Mo. 185; *McCune v. Hull*, 24 Mo. 570; *Manter v. Picot*, 33 Mo. 490; *Whittelsey v. Kellogg*, 28 Mo. 404; *Campbell v. Laclede, etc., Co.*, 84 Mo. 352; *Smith v. Catlin Land, etc., Co.*, 117 Mo. 438; *Shewalter v. Pirner*, 55 Mo. 218. Moreover, the intersection of the dam with Florissant avenue is not at all inconsistent with defendant's license limiting it to lots 9, 10 and 11. *West v. Bretelle*, 115 Mo. 653, relied on by defendant, does not support its contention in this case, and what is here decided in no manner conflicts with that case.

The second license from the Niedlander & Thomas Real Estate Company, dated August 1, 1892, acknowledged October 18, 1892, and recorded November 11, 1892, confers upon defendant no right to the possession of or to any easement in lot 13, as against the claim of the plaintiff. That license was given by the owner of the equity of redemption of lot 13. When the deed of trust for $12,000, which was dated August 23, 1892, and recorded September 2, 1892, given by the grantor of defendant's licensor, was foreclosed, it effectually wiped out defendant's license so obtained from the owner of the equity of redemption as completely as it did other subsequent incumbrances and vested the title in the purchaser at the trust sale, discharged from all burdens not prior in time to the deed of trust under which he purchased.

It follows that the instruction given for the plaintiff was not proper, in that it did not qualify the general rule of law announced, by a restriction justifying the

flooding of lot 13, if it resulted from natural and necessary causes from the exercise and enjoyment of the authorized uses of lots 9, 10 and 11.

The first instruction given for defendant is erroneous. It is based upon a major premise of flooding lot 13, by necessity from the authorized use of lots 9, 10 and 11, a minor premise that the description of the lands mentioned in the license necessarily included lot 13, and from this the conclusion is drawn that the license included a grant to flood lot 13. As above shown there was no foundation in the case upon which to predicate the minor premise.

II. Is plaintiff's action barred by limitation? The original license was dated July 7, 1883. The evidence shows that the work of constructing the pond was begun in 1883, but not much was done until 1884; that the dam was completed in December, 1884, and that lot 13 was not flooded before the fall of 1884. This suit was instituted on the twenty-eighth of June, 1894. It can not therefore reasonably be claimed that the defendant was in possession of lot 13 before the water spread onto it in the fall of 1884, even if the necessary escape of the water from lots 9, 10 and 11 onto lot 13 could, in any sense, be regarded as a possession of lot 13 by defendant. We must assume that defendant intended to take possession of only so much property as it had a lawful right to occupy under its license, and if it took possession of more by mistake, such possession would not be under claim of right, and would not therefore be adverse, and not being adverse the statute of limitations would not run in its favor. *Crawford v. Ahrnes*, 103 Mo. 88; *Finch v. Ullman*, 105 Mo. 255; *McWilliams v. Samuel*, 123 Mo. 659; *Milling Co. v. Riley*, 133 Mo. *l. c.* 586. It is not fair or just to defendant to believe that it acquired an easement in

lots 9, 10 and 11, and immediately, without any color of right or title, entered upon lot 13 to which its license was not made to apply, and set up a claim thereto adverse to the rights of the owner, intending thereby to assert title to lot 13, if the owner did not, within the statutory period, eject it therefrom. The circumstances show, and we prefer to believe, that the defendant was actuated by a proper desire to occupy only the property it had an easement in, and that the fact that, in the enjoyment of such easement, water naturally and necessarily flowed onto and stood upon lot 13, was regarded by it and by the owner of lot 13, as one of the burdens which that lot had to bear resulting from the enjoyment by defendant of its easement in lots 9, 10 and 11. This does not properly constitute possession of lot 13 by defendant at all, adverse or otherwise. The defendant's first attempt to get or hold possession of lot 13 must therefore be considered as beginning from the date of its second license on August 1, 1892, and, so far as plaintiff is concerned, it must be regarded as beginning on November 14, 1892, the day its second license was put on record. This was not ten years before the institution of this action, and hence would not bar plaintiff's right, and that license, being derived from the holder of the equity of redemption, was cut out by the sale under the prior deed of trust recorded September 2, 1892, under which sale plaintiff claims title, and therefore defendant has no easement in lot 13, as against plaintiff.

The second instruction given for defendant is altogether erroneous. It is bottomed upon the idea that lot 13 was flooded and that the failure of the owner to protest against it or his acquiescence in it, barred his right to recover possession. This is an action for possession. The flooding of one's land is a trespass for

which the owner may recover damages or may be estopped therefrom if he acquiesced in the trespass, but such considerations do not determine the title to or possession of the premises on which the trespass was committed.   The instruction therefore was wholly inapplicable to the issues in this case.

We do not deem it necessary to review the other instructions in the case.   Our views of the rights of the parties hereinbefore given will enable the learned counsel in the case to draw proper instructions on the re-trial of the case.

The judgment of the circuit court will be reversed. If the case involved only the right to flood land, ejectment would not lie, but because defendant's answer sets up possession and title by limitation to the whole of lot 13, the cause will be remanded for further proceedings in conformity herewith.   It is so ordered. All concur.