State ex rel. Horton v. Brechler, 185 Wis. 599.

STATE EX REL. HORTON, Petitioner, vs: BRECHLER, Town Clerk, Defendant.
SAME, Petitioner, vs. KETTERER, Town Clerk, Defendant.

*January 13—January 26, 1925.*

*Schools: Formation of school districts: Discretion of town board:*
*    Appeals to county committee: Constitutionality: Acquiescence*
*    in unconstitutional law: De facto corporations: Annexation*
*    of territory to district: Property not described in petition:*
*    Mandamus: Nature of writ: Courts: Original jurisdiction:*
*    When exercised: Relief in trial court inadequate.*

1. The original jurisdiction of the supreme court is exercised in this case because the subject matter of the action (taxation and education) involves public interests, though local in scope, and for the more persuasive reason that the remedy afforded by an action in the circuit court seems quite ineffective.   p. 603.
2. The formation of school districts is not a direct legislative function, as sec. 3, art. X, of the constitution requires the legislature to "provide by law for the establishment of district

schools," and from an early date the power to form school districts has been conferred upon town boards, and appeals from the decision of the board to the state superintendent have been authorized; and comparatively recent legislation authorizing the appeal to the county committee on common schools is not unconstitutional as a delegation of legislative power.    p. 605.

3. The order of the county committee on common schools on appeal, as authorized by sec. 39.13, Stats. 1921, attaching to a joint district the territory described in the petition, is valid as to such territory, whether or not the order was valid as to other territory of relatively small area included in the order but not designated by the petition.    p. 606.

4. The provisions of ch. 329, Laws of 1923, which was held unconstitutional in so far as it pretended to dissolve school districts consolidated or enlarged under pre-existing laws, do not constitute color of law, by reason of which the acquiescence of the districts involved and proceedings under the unconstitutional statute would work a dissolution of a consolidated joint district or restore the integrity of former districts.    p. 607.

5. Corporations can exist only by authority and sanction of law, and compliance with an unconstitutional law in the organization of a corporation cannot produce a valid body corporate.    p. 607.

6. Where proceedings in good faith are taken to form a corporation under an existing law authorizing its formation, and it presumes to organize and actually functions, it is a *de facto* corporation whose existence may not be challenged in a collateral proceeding, notwithstanding its failure to fully comply with the law prevents the formation of a corporation *de jure*.    p. 608.

7. While as a rule the writ of *mandamus* should issue to enforce a clear legal right, it is a discretionary writ, and may be withheld where its issuance will work confusion or lead to inequitable results.    p. 608.

8. An original writ of *mandamus* to compel town clerks to certify valuations of real and personal property to the district clerk of a joint school district will be denied, notwithstanding the legal duty of respondents was clear, where the petition was by an individual taxpayer and, due to acquiescence in the unconstitutional provisions of ch. 329, Laws of 1923, the districts annexed to such joint district functioned and were functioning as independent districts, and where confusion and public inconvenience would result, in view of the possibility that the legislature might by a valid statute achieve the result attempted by the prior unconstitutional act, in which case the results of the writ would be inequitable.    p. 609.

THESE ARE ORIGINAL and separate actions brought in this court praying for peremptory writs of *mandamus* to compel the respondent town clerks to certify to the district clerk of Joint School District No. 2 (hereinafter referred to as the Joint District) of the city of Fennimore, town of Fennimore and town of Mt. Ida, in Grant county, a statement of the valuation of the real and personal property in that part of the joint school district lying in their respective towns.

On the 22d day of April, 1921, one William Roach presented to the town boards of the towns of North Lancaster, Mt. Ida, and Fennimore, and to the common council of the city of Fennimore, a petition to change the boundaries of the Joint District so as to include territory belonging to various school districts in outlying towns, including the towns of Fennimore and Mt. Ida in Grant county. The town boards and city council took no action on the petition. The said William Roach appealed to the committee on common schools, as authorized by sub. (9), sec. 39.13, Stats. 1921. The committee on common schools made an order attaching to the Joint District the territory described in the petition, with about twenty-five acres additional territory not mentioned in the petition. This order was dated June 21, 1921. It was affirmed on appeal to the state superintendent. A writ of *certiorari* was then issued by the circuit court for Dane county to review the action of the state superintendent, but that proceeding was never brought to a hearing, and is still pending in that court. Thereafter the Joint District functioned throughout the territory thus annexed for a period of one or two years, and the school district organizations of certain school districts, dissolved by order of the committee on common schools, ceased to function.

Ch. 329 of the Laws of 1923 was enacted July 2, 1923. That law pretended to dissolve all joint school districts consolidated without a vote of the electors of the school districts affected. The terms of that law applied to the Joint District. After the passage of this law it seems to have been

assumed on the part of all, including town, city, and school district officers of the territory affected by these consolidation proceedings, that this law operated to restore the integrity of the former school district units. School district meetings were held in the school districts dissolved, taxes were levied, teachers employed, and, in some instances, school buildings were put in repair and money was borrowed. Both state and county paid school aid money to said districts. The assets of the Joint District were apportioned to the respective school districts as required by the provisions of said ch. 329 of the Laws of 1923. The Joint District officers asured the outlying districts that they did not claim further jurisdiction over that territory and, in some instances, tuition fees were exacted from pupils in said outlying territory who attended the city schools.

On March 11, 1924, this court in *State ex rel. Joint School Dist. v. Nyberg,* 183 Wis. 215, 197 N. W. 724, held ch. 329 of the Laws of 1923 unconstitutional in so far as it pretended to work a dissolution of school districts consolidated or enlarged under pre-existing laws. Since that time a controversy seems to have existed throughout the territory affected by the consolidation proceedings as to whether the outlying territory affected by such consolidation proceedings is still a part of the Joint District.

The town clerks of the towns of Mt. Ida and Fennimore refused to certify to the clerk of the Joint District the valuation of the real and personal property lying within their respective towns and included within such district, if said outlying territory is in fact a part of the Joint District. To compel such action on the part of said town clerks these proceedings were instituted in this court. An alternative writ of *mandamus* to the respective town clerks issued out of this court on the 18th day of November, 1924, by the terms of which said town clerks were restrained from delivering the tax roll to the town treasurer until the further order of the court herein. The town clerks severally made

return to such peremptory writs, to which returns the petitioners demurred.

For the petitioners there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *Arthur W. Kopp.*

For the defendants there were briefs by *Olin & Butler,* and oral argument by *R. M. Rieser,* all of Madison.

The following decision was announced January 26, 1925:

*By the Court.*—Peremptory writ of *mandamus* denied, and temporary injunction vacated. An opinion will be filed later.

The following opinion was filed February 10, 1925:

OWEN, J. The decision of this court denying the peremptory writ of *mandamus* and vacating the temporary injunction was filed on the 26th day of January, 1925. It will be the function of this opinion to state the grounds upon which that decision was based. We appreciate, at the outset, that the original jurisdiction exercised by this court in these proceedings is not easy to justify, and it is quite probable that such jurisdiction has here been extended to its uttermost limits. While the subject matter of the action (taxation and education) is in its nature *publici juris,* yet it is local in scope and can hardly be said to affect the sovereignty of the state, its franchises and prerogatives, or the liberties of its people. *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628. We were rather persuaded to exercise original jurisdiction because the subject matter of the action did involve public interests, though local in scope, and for the more persuasive reason that the remedy afforded by an action in the circuit court seemed quite ineffective.

By sec. 40.20, Stats., the respective town clerks are required to deliver to the district clerk of joint school districts a statement of the valuation of real and personal property in

that part of such district lying within their respective towns on or before the last Monday in September. There was no default, therefore, on the part of the town clerk prior to the fourth Monday in September and no cause of action arose to compel him to perform this duty prior to that date. If the plaintiff were relegated to his action in the circuit court, it was plain that an appeal to this court would delay a final determination of the rights of the parties far beyond the time when it became the duty of the town clerk to deliver the tax roll to the town treasurer. Unless the town clerk was restrained from so doing, the question presented to this court would be a moot question, as it would not then be within the power of this court to compel the town clerk to make the certification necessary to enable the district clerk to certify to the town clerk the amount of school district taxes levied upon the property of the school district lying within his town. On the other hand, if the town clerk was so restrained it would seriously interfere with the collection of taxes and the transaction of the public business of said towns. The situation presented was quite similar to the circumstances which prompted this court to take original jurisdiction in the case of *State ex rel. Blaine v. Erickson,* 170 Wis. 205, 174 N. W. 919, and, to some extent, influenced the court in *State ex rel. Richter v. Chadbourne,* 162 Wis. 410, 156 N. W. 610.

In order to determine whether the outlying territory is now a part of the Joint District, it is necessary to consider, first, whether the order made by the county committee on common schools was effectual to attach such territory to said Joint District, and second, whether anything has occurred since to restore the districts affected by that order to their original integrity.

The principal argument made against the validity of the order of the county committee on common schools is that the committee exceeded its authority in attempting to include territory not prayed for by the petition, and because the

power conferred by the statute (sub. (9), (10), sec. 39.13), and upon the state superintendent by sec. 39.01, Stats. 1921, constitutes a delegation of legislative power, and such statutes are unconstitutional.

The formation of school districts, however, is not a direct legislative function. Sec. 3, art. X, of the state constitution requires the legislature to "provide by law for the establishment of district schools, which shall be as nearly uniform as practicable." From the very beginning of state government the power to form school districts has been conferred upon town boards—official bodies which are nearest to those who are interested in the formation of school districts. The legislature has not attempted to set up any required standard or to make the action of the town board dependent upon the existence of any facts or circumstances. The town board has been permitted to exercise its discretion and form school districts that will in its best judgment promote the cause of education. From the earliest days the appeal from the decision of the town board in such matters to the state superintendent has been authorized. In *State ex rel. Moreland v. Whitford*, 54 Wis. 150, 11 N. W. 424, the power of the state superintendent in this respect was challenged as being unconstitutional. This court there held that his power was *quasi*-judicial in nature and that it did not offend against any constitutional provisions.

By comparatively recent legislation the county committee on common schools was created and an appeal from the town officers acting upon a change of school district boundaries was authorized to that body, the appeal to be tried "in the manner, within the time and with the same result as in case of trial on appeal to the state superintendent." The power thus conferred upon the county committee on common schools is the same as that conferred upon the state superintendent, and as there is no constitutional objection to the exercise of this power by the state superintendent, there can be none to the exercise of the same power by the committee

on common schools. The law, therefore, authorizing the appeal to the county committee on common schools is not unconstitutional.

The order of the committee on common schools was confined to the exact territory mentioned in the petition, with the exception of twenty-five acres. It annexed to the Joint District twenty-five acres not mentioned in the petition. It is claimed that in so doing it exceeded its jurisdiction. Without considering the question whether the county committee had jurisdiction to annex any territory other than that described in the original petition, we are of the opinion that, in any event, it does not invalidate the order of the county committee so far as it related to the territory described in the petition. The twenty-five acres thus affected constituted such an insignificant proportion of the total territory annexed that it cannot be thought that the action of the committee in annexing the territory described in the petition was in any manner influenced by the inclusion of the twenty-five acres not therein described. Should a proper action be brought by some one interested in the twenty-five acres to test the validity of the annexation, a question would be presented which we do not feel it necessary to consider at this time. Nothing appears in the return of the respondents to indicate the invalidity of the annexation order by the county committee on common schools, and we must hold that the territory described in the petition was properly annexed to and became a part of the territory of the Joint District.

We now come to consider the question of whether that territory is still a part of said joint school district. Upon the passage of ch. 329 of the Laws of 1923 it was assumed by all interested that all districts affected by the order of annexation were restored to their former boundaries and their original status and integrity. That provision, however, was unconstitutional and void and had no effect whatever upon the territory annexed to said Joint District. *State ex rel. Joint School Dist. v. Nyberg,* 183 Wis. 215,

197 N. W. 724. But it is contended that that law was acquiesced in and acted upon by all parties concerned, and that the Joint District should be estopped to question the present legal existence of the original school districts, to accomplish which the doctrine of *State ex rel. West v. Des Moines,* 96 Iowa, 521, 65 N. W. 818, should be applied. In that case it appears that the legislature passed a law arbitrarily extending the limits of all cities of the state containing a population of 30,000 inhabitants, two and one-half miles in each direction. The city of Des Moines acted under this law and, accordingly, extended its boundaries and exercised its municipal powers over that territory for a period of four years. One West, upon the relation of the state, brought an action of *quo warranto* to test the validity of the law and the authority of the city of Des Moines to thus exercise its municipal powers over that territory. In that case the court applied the well established rule that the existence of a corporation may not be attacked collaterally where it appears to be acting under color of law and is recognized as such by the state. It was held that the unconstitutional law under which the city of Des Moines extended its boundaries and introduced its municipal jurisdiction into such extended territory constituted "color of law." It has been repeatedly held in this state that an unconstitutional law is an absolute nullity and does not amount to "color of law." *Smith v. Sherry,* 50 Wis. 210, 6 N. W. 561; *S. C.* 54 Wis. 114, 11 N. W. 465; *Gilkey v. How,* 105 Wis. 41, 81 N. W. 120; *Winneconne v. Winneconne,* 111 Wis. 10, 86 N. W. 589; *Huber v. Martin,* 127 Wis. 412, 105 N. W. 1031, 1135. The underlying principle of these cases is that corporations can exist only by authority and sanction of law. Where the law under which they pretend to come into existence is unconstitutional, they cannot refer their existence to any law, and, there being no law, there can be no corporation, no matter how punctiliously they might have complied with the provisions of the assumed law in their formation.

Where, however, there is a law under which a corporation may be legally formed, and proceedings in good faith are taken to that end, and they have presumed to organize and have actually functioned as a corporation, they are held to be a *de facto* corporation and their existence may not be challenged in a collateral proceeding, even though there was not full compliance with statutory provisions authorizing their formation so as to constitute a corporation *de jure*. *Gilkey v. How,* 105 Wis. 41, 81 N. W. 120, and cases there cited; *Huber v. Martin,* 127 Wis. 412, 105 N. W. 1031, 1135. Under these decisions we cannot hold that ch. 329, Laws of 1923, constituted even "color of law" under which the original school districts could be restored to their integrity, and no amount of acquiescence on the part of any one can be construed to accomplish that purpose. It follows, therefore, that the Joint District includes the territory annexed thereto by the order of the county committee on common schools.

While the foregoing establishes the legal duty of the defendant town clerks to make the certificate which these proceedings are brought to compel, we have nevertheless concluded that the writs should not issue. While as a rule the writ of *mandamus* should issue to enforce a clear legal right, it is a discretionary writ and may be withheld where its issuance will work confusion or lead to inequitable results. In this case the original school districts proceeded to reorganize in the best of faith and with the acquiescence of the school district officers of the Joint District. They functioned during the school year of 1923-1924. In some districts the schoolhouses were repaired, and in one district the sum of $3,000 was borrowed to improve the schoolhouse. Both county and state authorities approved their existence as fully independent school districts. They received both state and county aid for the school year 1923-1924. They have entered upon another school year. They

State ex rel. Horton v. Brechler, 185 Wis. 599.

have employed teachers, and schools are being conducted. The legislature is in session, and it may enact valid legislation to carry out the purpose which it attempted by the enactment of ch. 329, Laws of 1923. Should this be done, the granting of the writ at this time would work most aggravating confusion. It would result in the closing of the schools of these districts during the middle of the school year, the dismissal of the teachers therein employed, require the transportation of the pupils to the city school, and perhaps result in double taxation to the inhabitants of this territory. All of this would have to be undone should the legislature enact a valid law re-establishing the original school districts. We think that the interest of the community affected will be better served by withholding the issuance of the writ at this time and permitting the school districts to function during the remainder of the school year as they are now doing. We more readily come to this conclusion because the plaintiff in these actions is a private individual and brings the action as a taxpayer. Our opinion herein declares the legal status of the territory affected, and if that status shall not be changed by act of the legislature the duty of all concerned should be plainly understood, and we apprehend that there need be no concern that such duty will not be complied with during the next school year. Any attempt on the part of the outlying school districts to function as original units, or any refusal on the part of officers to discharge their duty upon the assumption that such territory does not belong to the Joint District, will be plainly contumacious, and the courts will find a summary way of compelling obedience.

For these reasons, the court announced its decision on the 26th day of January, 1925, denying the peremptory writ of *mandamus* and dismissing the petition.