STATE EX REL. MILWAUKEE SEWERAGE COMMISSION, Petitioner, vs. BOARD OF SUPERVISORS OF MILWAUKEE COUNTY and others, Respondents.

*April 10—May 9, 1933.*

414

For the petitioner there was a brief by *Max Raskin,* city attorney, and *William F. Quick,* first assistant city attorney, and oral argument by *Mr. Quick.*

For the respondents there was a brief by *William A. Zabel,* district attorney of Milwaukee county, *Oliver L. O'Boyle,* corporation counsel, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. O'Boyle* and *Mr. Perry.*

WICKHEM, J.  In disposing of the rather narrow question involved in this appeal, it may be useful, first, to set forth certain matters that are conceded.  Sub. (7), sec. 59.96, Stats., is mandatory.  The county board of Milwaukee county has no discretion to refuse the demand of the Sewerage Commission.  In *Thielen v. Metropolitan Sewerage Comm.* 178 Wis. 34, 189 N. W. 484, this court said:

"By the terms of the act, when certain things are done by the Metropolitan Sewerage Commission the various county, city, town, and village officers are required to do certain things, as to the doing of which they have no discretion, as for instance the matter of the issuing of the bonds, certification of taxes, the collection and disbursement of funds are provided for, not in the discretion of the governing bodies

of the various municipalities but by the legislature itself by the express terms of the law."

To the same effect are *Miller v. Milwaukee,* 182 Wis. 549, 196 N. W. 235, and *Golden v. Green Bay Metropolitan Sewerage Dist.* 210 Wis. 193, 246 N. W. 505.

It follows that none of the matters set forth in the return have any legal materiality, and the only contention made by the defendants is based upon the cases of *State ex rel. Horton v. Brechler,* 185 Wis. 599, 202 N. W. 144; *State ex rel. Wis. Power & Light Co. v. Zimmerman,* 194 Wis. 193, 215 N. W. 887; and *State ex rel. New Strand Theatre Co. v. Common Council,* 201 Wis. 423, 230 N. W. 60. In accordance with what is claimed to be the doctrine of those cases, this court is asked to take judicial notice of the present financial crisis, to take into account the facts set forth in the return which, for the purposes of this case, must be treated as verities, and to hold that since the writ is discretionary in character, it was proper to withhold it in this case upon the ground that its issuance would work confusion and lead to inequitable results. This was the view of the trial court, and the situation calls for a further analysis of the *Horton Case.* In the *Horton Case* the action was by a taxpayer to compel certain town clerks to certify to the district clerk of the joint school district a statement of the valuation of real and personal property. The proceedings were the result of the passage of ch. 329, Laws of 1923, which law purported to dissolve all joint school districts consolidated without a vote of the electors of the school districts affected. After the passage of this law it seems to have been assumed by town, city, and school district officers of the territory affected that the law operated to restore the integrity of the former school district units. District meetings were held in these districts, taxes levied, teachers employed, and, in some instances, school buildings

put in repair and money borrowed. Thereafter this court held the law unconstitutional in so far as it purported to dissolve school districts consolidated or enlarged under pre-existing laws. This court held that since the law dissolving joint school districts was unconstitutional and void, the clerks had a legal duty to certify. Nevertheless the court declined to issue the writ upon the ground that while the writ of *mandamus* should issue to enforce a clear legal right, it is discretionary in character and may be withheld where its issuance will work confusion or lead to inequitable results. It was pointed out that the granting of the writ would result in the closing of the schools during the middle of the school year, the dismissal of the teachers then employed, require the transportation of the pupils to the city school, and per-haps result in double taxation to the inhabitants of the ter-ritory. In addition, all this would have to be undone if the legislature should enact a valid law re-establishing the orig-inal school districts. It was held that the interest of the community would be better served by withholding the writ and permitting the school districts to function during the remainder of the school year. The court stated: "We more readily come to this conclusion because the plaintiff in these actions is a private individual and brings the action as a taxpayer."

It is believed that the statement of the facts and the hold-ing in this case will make evident the distinction between the situation there presented and that with which the court is confronted in this case. This is not a contest between a taxpayer and a public officer, but one affecting the legal relations of two governmental agencies. In the *Horton Case,* to deny the writ would be to defeat the principal pur-pose of the law itself by closing schools in the middle of the year and otherwise disrupting an existing school system, and all because of the insistence of a taxpayer that the town

clerks carry out what strictly was their legal duty. Here there is no such matter involved. The statute has vested in the Sewerage District the complete power to plan, construct, and maintain sewers, and to call upon the county to issue bonds. It has given the county board no discretion to refuse to issue the bonds. The Sewerage District seeks the aid of this court to compel the county board to carry out its plain, legal duty and the plainly expressed intent of the statute. To refuse the aid of the court would be to defeat the purpose and intent of the law. To say that a court ought to decline its aid because under all the circumstances it thinks with the county board that the expenditure of a further sum for sewerage extensions is unwise, or even disastrous financially, is in effect to claim for it the right to suspend, at least during the emergency, the operation of a plain, unambiguous legislative mandate. In our judgment this would not merely be an abuse of discretion, but a usurpation of legislative power that could not be defended upon any ground. The wisdom of the whole matter was for the legislature. It has indicated its position clearly. The desirability of extending the sewerage system, and its relation to the health of the people of the district involved, is vested by the legislature for determination solely in the Sewerage Commission.

It was the view of the trial court that the return showed other mandatory duties which the county board was quite as obligated to discharge as the one in question, and that the court in its discretion might decline to compel the county board to achieve the impossible. A careful study of the return convinces us that this is not sound in fact. About the closest that the return can be said to come to alleging impossibility is the claim that a levy of the full one per cent. authorized by law as a tax levy would be disastrous, and that the issuance of the sewerage bonds would seriously impair the ability of the county to sell bonds for poor relief. Even

assuming that the position of the trial court would be valid if impossibility were shown, we think the return falls short of such a showing. On the basis of the return a greater levy could lawfully be made, and the manner in which this would work disastrously is not pointed out. Nor do we think that the claim that the issuance of sewer bonds will seriously impair the issuance of other bonds or their market, either charges an impossibility or sets forth a legally material fact. All of these matters go to the wisdom of issuing the bonds, and the legislature has foreclosed any inquiry of this sort by the court. If the present financial crisis calls for intervention of some sort, recourse must be had to the legislature.

It follows that petitioner is entitled to the writ.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer to the return, and for further proceedings according to law.