Sean P. KEANE, M.D., Plaintiff-Appellant,

v.

ST. FRANCIS HOSPITAL, Richard Abdoo, Michael Murry, Mark Knight, Robert Gunderson, Edward Cichurski, Paul F. Linn, Sr. Vinginette Reczek, Sr. Mary Ramona Dombrowski, Sr. Mary Clarette Stryzewski, Sr. Mary Christella Butrymowicz, Sr. Mary Carolita Turzinski, Sr. Mary Margaret Narloch and Sr. Mary Ursula Myszka, Defendants-Respondents.

Court of Appeals

*No. 93–0248. Submitted on briefs October 5, 1993.—Decided August 9, 1994.*

(Also reported in 522 N.W.2d 517.)

637

639

For the plaintiff-appellant the cause was submitted on the briefs of *Fox, Carpenter, O'Neil & Shannon, S.C.*, with *John H. Schaller* and *Diane Slomowitz* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Michael, Best & Friedrich*, with *Charles P. Graupner* and *Jonathan H. Margolies* of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J.   Sean P. Keane, M.D., appeals from the trial court judgment denying his motions for an order of mandamus and for summary judgment, and granting summary judgment to the respondents, St. Francis Hospital and its Board of Directors. Dr. Keane claims that his removal as chief of staff at St. Francis Hospital was improper and that the trial court erred in denying his motion for mandamus to gain reinstatement. We agree with Dr. Keane that the St. Francis Hospital Board of Directors improperly exercised its authority when it removed him as chief of staff. We conclude, however, that the trial court exercised reasonable discretion in deciding that, based on equitable grounds, Dr. Keane was not entitled to mandamus for reinstatement as chief of staff. Therefore, we affirm.

## I.  FACTUAL BACKGROUND

The facts before the trial court were not in dispute. Dr. Keane was elected president-elect of the medical/dental staff of St. Francis Hospital in December 1989, and was confirmed by the hospital board of directors to serve a two-year term as president-elect starting January 1, 1990. He then succeeded to the office of president of staff (typically termed, "chief of staff") for a two-year term starting January 1, 1992. Substantial tensions developed between Dr. Keane, on the one hand, and Mark Knight, St. Francis Hospital's

chief executive officer, and the St. Francis board of directors, on the other. On July 23, 1992, the hospital's Executive Committee voted unanimously to terminate Dr. Keane as chief of staff. The same day, after Dr. Keane rejected the opportunity to resign, the St. Francis Board of Directors ratified the termination decision and removed him as chief of staff.

Dr. Keane sought an order of mandamus to gain reinstatement as chief of staff based on Article XIII, Section 4 of the Medical/Dental Staff Bylaws Rules and Regulations of St. Francis Hospital, which provides:

> Section 4.   Removal of Officers
>
> The Governing Board, by resolution, may remove an officer of the Medical/Dental Staff upon receipt of a recommendation of three-fourths (¾) of the Active Medical/Dental Staff.

It is undisputed that the board removed Dr. Keane without receiving any recommendation from the medical/dental staff. Thus, Dr. Keane alleged in his complaint seeking mandamus, "By its conduct in unilaterally acting to remove plaintiff as president of the Staff the Board exceeded its authority, and acted illegally and contrary to the Bylaws." Dr. Keane further alleged:

> 23.   Plaintiff, as the duly elected president of the Medical/Dental Staff is entitled to remain as president of the Staff unless and until removed pursuant to Article XIII, Section 4 of the Bylaws. In unilaterally voting to remove plaintiff as president, in the absence of receipt of a recommendation by three-fourths (¾) of the Staff, the Board failed to adhere to the provisions of the applicable Bylaws and acted without authority.

642

24. The defendants, by attempting to remove plaintiff as president of the Staff have acted in derogation of plaintiff's rights and have exceeded their lawful authority. Reinstatement of plaintiff by the Board is not a discretionary act.

25. Plaintiff has sustained and will in the future sustain substantial injury and damage by reason of the unlawful acts of the defendants. By their usurpation of authority the defendants have damaged plaintiff's reputation and character, have damaged plaintiff's reputation and standing among his patients' and in the medical community, have interfered with plaintiff's professional relationships with his patients and colleagues and have destroyed the integrity of the procedural framework by which the quality of patient care was secured for patients by the members of the Medical/Dental Staff at St. Francis Hospital.

26. Despite demand by plaintiff that the defendants reinstate plaintiff to the office of president of the Medical/Dental Staff, defendants have refused reinstatement. The plaintiff has available to him no other remedy at law or in equity.

The trial court granted summary judgment to the respondents and denied mandamus to Dr. Keane, determining that Article XIII, Section 4 was not the exclusive authority by which the board could remove a chief of staff.[1] Thus, the trial court concluded that Dr. Keane had failed to show his entitlement to reinstatement under a clear legal right free from substantial

---

[1] The trial court stated:

There is no "only" language in here that limits this as being the only way nor does it state that it's completely involuntary on behalf of the Board to do so. So, in this Court's analysis while that is one way in which the Chief of Staff could be removed, I do not believe that it standing by itself suggests that there aren't many ways.

doubt and, therefore, he was not entitled to mandamus.[2]

## II.  STANDARD OF REVIEW

Summary judgment methodology, set forth in § 802.08, STATS., has been summarized in many cases, *see, e.g., Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314-315, 401 N.W.2d 816, 820 (1987), and need not be repeated here. Our review of a trial court's decision to grant or deny summary judgment is *de novo. Id.* In this case, the parties agreed that the summary judgment determination coincided with the merits of the mandamus action and, as the trial court stated, the decisions on summary judgment and mandamus were "fused into one."[3] Thus, in reviewing the trial court's granting of summary judgment, we also will focus on the merits of Dr. Keane's motion for mandamus.

---

[2] On appeal, the respondents argue that Dr. Keane has not satisfied the criteria for mandamus. They do not argue that, because this is not an action involving a duty mandated by statute or ordinance, mandamus is unavailable to him. Thus, without considering potential issues not argued in this appeal, we address the merits of the parties' disputes. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.,* 90 Wis. 2d 97, 108-109, 279 N.W.2d 493, 499 (Ct. App. 1979) (issues not disputed deemed admitted).

[3] A proceeding by *mandamus* is essentially a suit, and when the issue is joined by the return, it becomes a civil action within the meaning of the statutes, and the form and sufficiency of the several pleadings must be governed by the same rules that prevail in other civil actions. Sections 783.01 and 783.02, STATS.; *State ex rel Dame v. Le Fevre,* 251 Wis. 146, 150, 28 N.W.2d 349, 352 (1947).

In reviewing a mandamus action, "the action of a trial judge in either granting or denying the writ will be affirmed" unless the judge erroneously exercised discretion. *State ex rel. Kurkierewicz v. Cannon*, 42 Wis. 2d 368, 375-376, 166 N.W.2d 255, 258 (1969). Since at least 1859, the supreme court has recognized that "mandamus is a proper remedy to restore a party to the possession of an office from which he has been illegally removed." *State ex rel. Gill v. Common Council of Watertown*, 9 Wis. 229, [*254], 234, [*258] (1859) (writ of mandamus granted in action to compel common council to restore ousted superintendent of schools to office). In *Gill*, the common council removed the school superintendent from office, exercising what it considered its discretion to determine what was "due cause" for the removal. *Id.* at 235 [*259]. Granting a writ of mandamus to reinstate the superintendent, the supreme court concluded that the council had exceeded its authority. With words equally applicable to the instant case, the supreme court stated:

> Such discretion exists only where there is a decision on some subject which the law has given the power to decide on .. . . But in such case, if [an officer exercising discretion] should assume to act upon a matter not entrusted to [the officer], . . . [the officer] would be controlled and compelled . . . to vacate [the] proceedings.. . . The uncontrolled discretion of such . . . officers or bodies, includes only their discretion upon the very subject matter which by law they may determine, but does not include the decision as to the extent of their own authority. Their judgment upon the matter which by law they may determine, will not be controlled. But their judgment as to what the law has allowed them to determine, will be con-

645

trolled, otherwise they may assume unlimited powers.

*Id.* at 235-236 [*259-260]. Similarly, in *State ex rel. Hayden v. Arnold*, 151 Wis. 19, 138 N.W. 78 (1912), involving a tax assessor's mandamus action for reinstatement to his position, the supreme court noted, " 'if the rightful officer, in the actual enjoyment of the office, is wrongfully removed, [mandamus] is generally regarded as the proper remedy to compel his restoration.' " *Id.* at 25, 138 N.W. at 80 (citation omitted).

In *Neu v. Voege*, 96 Wis. 489, 71 N.W. 880 (1897), the supreme court stated the criteria governing whether a trial court will issue a writ of mandamus:

> To be sure, the granting or refusing of a writ of *mandamus* is somewhat discretionary, but when the application therefor is made by a person to enforce a clear legal right; the duty sought to be enforced is positive and plain; the applicant for the writ shows that he will be substantially damaged by nonperformance of such duty; and there is no other adequate specific legal remedy for the threatened injury, *and no laches* on the part of such applicant, *and no special reasons* exist rendering a resort on his part to the remedy, under the circumstances, inequitable, to refuse to issue the writ constitutes an abuse of judicial discretion.

*Id.* at 492-493, 71 N.W. at 881 (emphasis added). We note that when the authorities recite the mandamus requirements they sometimes shorten the reference, deleting the "and no laches . . . and no special reasons" clauses that conclude the criteria. In *Law Enforcement Standards Bd. v. Village of Lyndon Station*, 101 Wis. 2d 472, 305 N.W.2d 89 (1981), for example, despite just

previously quoting the full statement of mandamus requirements, the court went on to state:

> It is an abuse of discretion to refuse to issue the writ when the noted prerequisites are present: (1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law.

*Id.* at 494, 305 N.W.2d at 99. In the briefs filed in this case, the parties sometimes also use such a shorthand reference to the criteria. Neither party argues, however, that the "and no" clauses have been abandoned. The theme throughout the caselaw is that the four criteria preceding the "and no" clauses establish the legal prerequisites that *must* be satisfied before a trial court can grant the writ, while the "and no" clauses then carry the trial court to additional discretionary, equitable considerations.

Thus, we first must consider whether the trial court was correct in concluding that Dr. Keane failed to pass the primary prerequisites. Did Dr. Keane have a clear legal right to be chief of staff unless and until the board removed him according to the procedure set forth in Article XIII, Section 4? Did the board have a positive and plain duty not to remove him unless and until it complied with Article XIII, Section 4? If so, we then must consider whether Dr. Keane would be substantially damaged by nonperformance of such duty, and whether no other adequate remedy exists. *See Lyndon Station*, 101 Wis. 2d at 494, 305 N.W.2d at 99 ("It is an abuse of discretion to refuse to issue the writ when the noted prerequisites are present."). Further, if Dr. Keane met the prerequisites for issuance of the writ but the trial court denied mandamus nonetheless, we must review whether the trial court erroneously exer-

cised discretion regarding laches (not an issue in this case) or regarding "special reasons" that would "render[ ] a resort . . . to the remedy, under the circumstances, inequitable." *Neu*, 96 Wis. at 493, 71 N.W. at 881.

### III. MANDAMUS — THE LEGAL PRERE-QUISITES

#### A. A Clear Legal Right/A Positive and Plain Duty

Article VI, Section 1 of the St. Francis Hospital bylaws provides, in part:

> Medical-Dental Staff Bylaws and Rules and Regulations shall be subject to and effective upon approval by the Board of Directors and shall be binding upon both the Medical-Dental Staff and the Board of Directors.

The St. Francis board of directors did approve the staff bylaws that included the Article XIII, Section 4 provision regarding removal of officers. Dr. Keane argues that this provision constituted the exclusive authority by which he could be removed as chief of staff. He maintains, therefore, that because the staff had not recommended his removal, the board had no authority to remove him. Accordingly, he contends that he has clear legal rights—to serve as chief of staff and to be removed only according to the staff bylaws approved by the board, and that St. Francis has a plain and positive duty—to comply with the bylaws.

St. Francis agrees that Article XIII, Section 4 is binding on the board, but argues that it is not the exclusive authority for removal. St. Francis contends that the permissive wording, "may remove," necessa-

rily establishes that this section merely provides one method by which the board may choose to remove a chief of staff. St. Francis then maintains that its board has overriding authority to run the hospital"and to remove a chief of staff—under other provisions in the hospital bylaws authorizing the board to "maintain a qualified medical/dental staff," and to do "all else necessary to promote the spiritual, physical and financial well being of the corporation." Further, St. Francis contends that because it had authority under the bylaws to confirm Dr. Keane as chief of staff following his election by the staff, it also had authority to remove him whether or not the staff recommended that it do so.

██ St. Francis is wrong. Construction of bylaws and their application to undisputed facts present a question of law that we review *de novo. See State ex rel. Siciliano v. Johnson,* 21 Wis. 2d 482, 487, 124 N.W.2d 624, 626-627 (1963). The staff bylaws, once adopted by the board under Article VI, Section 1 of the hospital bylaws, were incorporated in the St. Francis Hospital bylaws and were binding on the board of directors.[4] There also is no dispute that Article XIII, Section 4 provided the only explicit reference in the bylaws to removal of a staff officer and that Dr. Keane was such an officer. Thus, Article XIII, Section 4 provided the only express authority to remove a chief of staff. It provided the specific procedure that required a three-

[4] The trial court, however, concluded only "that the Board is obligated to acknowledge the staff by-laws, and they are in a sense incorporated into the hospital by-laws .. . ." Clearly, the plain language of Article VI, Section 1 requires far more than mere "acknowledgement," and the trial court's rather tentative assessment that the bylaws were "in a sense" incorporated erroneously construed their explicit "binding" authority.

fourths staff recommendation before the board could even consider removing a duly elected and confirmed chief of staff.

St. Francis argues, however, that construing Article XIII, Section 4 as the exclusive authority for removal of a chief of staff would require it to "relinquish[] all power over administrative positions which are the subject of written board resolutions." That, St. Francis maintains, would be incompatible with its legal responsibility for the overall operation of the hospital and its staff under various broadly-worded state and federal regulations. We disagree. Under the bylaws, the board retains considerable power. First, it can decline to accept a nominee for chief of staff.[5] Second, it can decline to confirm an elected chief of staff.[6] Third, the board "may" decline to remove a chief of staff despite a three-fourths staff recommendation to do so; and fourth, it "may" agree to remove a chief of staff upon receiving a three-fourths recommendation.

---

[5] Article XIII, Section 3, subsection 2.c. of the staff bylaws, incorporated in the hospital bylaws, in part, provides:

If any nominee [of the two nominees for each of the offices of President-Elect and Secretary-Treasurer, offered by the staff nominating committee] is not acceptable to the Governing Board, a joint meeting of the Nominating Committee and the Governing Board shall be held to select nominees acceptable to both the Committee and the Board.

[6] Article XIII, Section 3, subsection 1.a. of the staff bylaws, incorporated in the hospital bylaws, provides:

*Upon confirmation by the Governing Board,* all officers of the Medical/Dental Staff shall serve a term of two (2) years or until a successor is elected.

(Emphasis added.)

Hospital bylaws can constitute a contract between a hospital and its staff. *Bass v. Ambrosius*, 185 Wis. 2d 879, 884–888, 520 N.W.2d 625, 627-629 (Ct. App. 1994). As we recently explained:

> To hold that a hospital did not have to comply with its bylaws would, of course, render them essentially meaningless. They would then be a catalogue of rules, which, although binding on the medical staff, were merely hortatory as to [the hospital]—much "sound and fury, signifying nothing."

*Id.* at 885, 520 N.W.2d at 627 (citation and footnote omitted). Under the binding bylaws in this case, the board had no authority to remove Dr. Keane because it had not received a three-fourths staff recommendation. Any other construction would render the staff bylaws unenforceable if not "essentially meaningless." After all, at any point the board thought it best to ignore the very staff bylaws it had adopted, the board would be able to invoke its general authority to "maintain a qualified medical/dental staff" and do "all else" it deemed necessary. This, most obviously, would eviscerate the staff bylaws that require that the chief of staff, among his or her many functions, "shall serve as Chief Administrative Officer of the Medical/Dental Staff to: . . . Represent the views, policies, needs, and grievances of the Medical/Dental Staff to the Governing Body and other elements of the Hospital." Article XIII, Section 5.A.5.

Nevertheless, St. Francis argues that it had authority to remove Dr. Keane because, after all, it could have amended the bylaws to establish its unfet-

tered authority to remove a chief of staff.[7] Whether St. Francis could ever do that is a question we need not address. The fact is that St. Francis did not do that and, thus, had no authority to remove Dr. Keane without a three-fourths staff recommendation. *See St. John's Hosp. Medical Staff v. St. John Regional Medical Ctr.*, 245 N.W.2d 472, 474-475 (S.D. 1976) ("The medical staff bylaws were so adopted and approved [by the board]. Therefore, both the medical staff and the medical center are bound by them *until* they are amended . . . ." (emphasis added)).

St. Francis also argues that its board retained authority to remove Dr. Keane under Article III, Section 6 of the hospital bylaws that provides, "Any director may be removed from office at any time with or without cause by the Corporate Member." Further, St.

---

[7] Although this argument seems patently absurd, we note that it is not the first such argument presented to a court in a transparently desperate attempt to prevent reinstatement. In 1859, in *Gill*, the supreme court considered the common council's equally absurd and somewhat analogous argument that, after improperly removing the school superintendent, it could not restore him to that position because it did not have "the power of appointment" which belonged to the school commissioners. *Gill*, at 239 [*263]. The supreme court rejected the argument, stating:

> [T]he relator does not need any appointment, . . . his title is and has been complete and perfect to the office all the time; and he asks that the council, which has, without authority, removed him from that to which he is entitled, shall retrace its illegal steps, vacate its proceedings, and remove the obstacles which it has unlawfully placed in his way. He does not ask them to appoint him, but by vacating their unauthorized proceedings against him, to restore him to that to which he is already appointed.
>
> Their return that the power of appointment belongs to the school commissioners, is no answer to this demand.

*Id.*

Francis argues, this authority is consistent with § 181.26, STATS., that governs St. Francis Hospital as a non-profit corporation. Section 181.26, in part, provides:

> Any officer or agent elected or appointed may be removed by the persons authorized to elect or appoint such officer whenever in their judgment the best interest of the corporation will be served thereby.

Thus, St. Francis contends, because the chief of staff is a member of the board, the board could remove him.

St. Francis is wrong again. The board does not "elect or appoint" the chief of staff. Thus, § 181.26, STATS., is inapplicable. Further, under the bylaws, the chief of staff automatically becomes an *ex officio* member of the board during the period he or she serves as chief of staff.[8] Although the board has the option to confirm a chief of staff, upon confirmation, the chief of staff's *ex officio* board status is automatic. The board has no authority, merely by virtue of the chief of staff's *ex officio* status, to remove him or her as chief of staff. To conclude otherwise would be to allow the board to remove through the back door what it could not remove through the front door.[9]

---

[8] "The Chief of the Medical-Dental Staff shall serve as an ex officio, voting member of the Board of Directors ...." Article III, Section 4, St. Francis Hospital Bylaws.

[9] St. Francis also argues that it retained authority to remove Dr. Keane under a provision of the bylaws covering employees acting in administrative capacities under written contracts. This provision, however, also is inapplicable. As St. Francis concedes, Dr. Keane, as chief of staff, carried out his duties under the staff and hospital bylaws, not under a separate contract with St. Francis.

Finally, St. Francis argues that even if we ultimately conclude that Article XIII, Section 4 provided the exclusive authority for removal of a chief of staff, we should nevertheless affirm the trial court decision because the authority was uncertain. Thus, St. Francis maintains, given the existence of several other possible interpretations of the bylaws, Article XIII, Section 4 did not provide what the trial court termed a "clear and convincing legal right . . . free from substantial doubt." We disagree. Although St. Francis may believe that the bylaws suffer from a lack of clarity, we conclude that they are absolutely clear on the subject of removal of a chief of staff. The fact that other interpretations can be offered does not produce "substantial doubt." *See State ex rel. Lewandowski v. Callaway*, 118 Wis. 2d 165, 171, 346 N.W.2d 457, 460 (1984) ("Although the statutes that allegedly create the duty which Lewandowski seeks to compel may be unclear and may require statutory construction, that does not mean that mandamus is an inappropriate remedy."); *see also State ex rel. Althouse v. City of Madison*, 79 Wis. 2d 97, 106, 255 N.W.2d 449, 453 (1977) ("[T]he fact that the duty imposed involves the construction of a statute does not mean that the obligation set forth in the statute may not be compelled by mandamus.").[10]

---

[10] Similarly, in *Morrissette v. De Zonia*, 63 Wis. 2d 429, 433-434, 217 N.W.2d 377, 379 (1974), the supreme court stated:

> The trial court here misunderstands the necessity for a clear and unequivocal duty before mandamus will lie to compel performance of that duty. The court apparently felt that if construction and statutory interpretation were necessary to determine whether a mandatory duty existed under the facts, then mandamus would not lie even after such interpretation revealed the nature of the action sought to be compelled.. . . Because one has to resolve apparently conflicting statutory provisions to arrive at the nature of the duty

Thus, we conclude that Dr. Keane had a clear right to be chief of staff and to have St. Francis comply with Article XIII, Section 4 before removing him. We also conclude that, before removing Dr. Keane as chief of staff, the St. Francis board had a plain and positive duty to comply with Article XIII, Section 4.

## B.   Substantial Damages or Injuries

St. Francis does not argue that Dr. Keane suffered no substantial damages or injuries. Instead, St. Francis contends that "no substantial injury was found by the [trial] Court, which merely stated that 'there may have been some damage to Dr. Keane.' " Further, St. Francis argues, "Dr. Keane himself did not consider either his alleged monetary or reputational injuries sufficiently grievous to pursue any other action."

The trial court, resolving the case on other grounds, barely addressed the question of Dr. Keane's damages or injuries. In claiming that the trial court found "no substantial injury," St. Francis offers a rather dubious characterization of the trial court's comment that "there may have been some damage." Indeed, there is no dispute that Dr. Keane received a $25,000 annual stipend for his service as chief of staff and, further, there is no dispute that chief of staff is a position of considerable status. Election or removal as chief of staff would have self-evident significance for one's professional reputation. Whether Dr. Keane has pursued other actions is immaterial to the determination of whether the "substantial damage or injury" criterion has been satisfied. St. Francis has provided

---

sought to be compelled by mandamus does not mean that mandamus will not lie once that determination is made.

no substantial argument to counter the rather obvious proposition that the loss of income and professional standing resulting from removal as chief of staff constitute substantial injury.

## C. Other Adequate Remedy

St. Francis maintains that because Dr. Keane, in effect, alleged breach of contract, breach of fiduciary duty, and damage to reputation and business, he offered legal theories that could have been pursued through legal claims offering viable alternatives to mandamus. Clearly, however, none of those alternatives would have allowed Dr. Keane to gain prompt reinstatement. St. Francis has failed to explain how any action, other than mandamus, could have accomplished that. Money damages alone would not restore Dr. Keane's professional standing. "Mandamus may not be maintained if some other plain, *adequate, and complete* remedy exists." *Town of Burke v. City of Madison*, 17 Wis. 2d 623, 631, 117 N.W.2d 580, 584 (1962) (emphasis added).[11]

---

[11] Addressing both the third and fourth criteria in its decision, the trial court commented on what it considered Dr. Keane's dilemma:

> Yes, it's true and I would agree that there may have been some damage here to Dr. Keane, and I recognize that [Dr. Keane's lawyer] is in a difficult position coming in on a writ of mandamus which requires that there be no adequate remedy at law and then arguing well, maybe there are also some damages that occur, and this Court senses there may be other damages and there may be other causes of action; and I'm going to permit [Dr. Keane's lawyer], if he wishes to do so, since it would be disingenuous of him to come in here and ask for mandamus and then also have Causes of Action Two and Three, and I will permit him to file an amended summons and complaint, if he wishes to do so; but I do think there

Thus, to summarize, we conclude that the trial court erred in its determination that Dr. Keane failed to establish the clear legal right and plain and positive duty necessary to warrant mandamus. Further, although the trial court did not resolve the questions of substantial damage or injury, and availability of other adequate legal remedy, the undisputed facts establish that Dr. Keane satisfied those criteria as well. These conclusions, however, do not conclude the analysis.

## IV. MANDAMUS — SPECIAL REASONS/EQUITABLE FACTORS

The trial court decision also included the following:

I don't know that this Court needs to make a determination as to who was right or who was wrong. I just don't think that it's particularly pertinent or relevant to the issues this Court needs to decide. It certainly is relevant in advising this Court of the atmosphere that exists at St. Francis Hospital and I must say as a practical consideration I am loathe to force Dr. Keane back on the Board and the medical staff who for whatever reasons, be they even purely greed or misunderstanding or personality problems have decided that they do not care to have Dr. Keane there.

I think that taking in the equitable considerations and looking at the types of examples that the

---

is the possibility that there are other remedies at law available to Dr. Keane which obviously will also take it out of an appropriate mandamus situation.

This, however, like St. Francis's argument on appeal, misconstrues Dr. Keane's action. The fact that he may have other remedies available to reach other injuries does not mean that mandamus is unavailable to reach the damage of removal and the remedy of reinstatement.

parties have used that the dynamic tension between the Chief of Staff and the Board has ripened into something beyond dynamic tension into some sort of warfare and I think as a result of that the parties have been arguing about the public interest; and I guess when this Court views the public interest I don't think that it serves the public's best interest to place Dr. Keane back in a hospital with tremendous amount of dissension that apparently is going on with regard to his severing of that capacity.

. . ..

And I guess I would also finally have to say that when I view the equities as I was referring to early on with regard to what's happening over there I do not think it would serve the public to have Dr. Keane forced back onto this Board and as Chief of Staff of the Medical Staff given their lack of confidence in him, even if it's for reasons that are inappropriate or not founded. So for those reasons I am not going to grant the writ of mandamus.

"Although classed as a legal remedy, mandamus is equitable in its nature and its issuance is generally controlled by equitable principles. The rights of the public and of third persons may be considered." *State ex rel. Sullivan v. Hauerwas*, 254 Wis. 336, 340, 36 N.W.2d 427, 430 (1949). There can be occasions where a court concludes that the four legal prerequisites for mandamus have been satisfied and yet, on equitable grounds, decides that mandamus should be denied. In *State ex rel. Horton v. Brechler*, 185 Wis. 599, 202 N.W. 144 (1925), the petitioners sought writs of mandamus to compel town clerks to certify the valuation of real and personal property in certain outlying towns which, petitioners demonstrated, belonged in a school district from which the property had been excluded. Although

the petitioners demonstrated their clear legal right and the clerks' plain and positive duty, and although the damage was clear and no other remedy existed, the supreme court vacated the temporary injunction ordered by the trial court and denied the petition for writs of mandamus. The supreme court explained:

> While the foregoing establishes the legal duty of the defendant town clerks to make the certificate which these proceedings are brought to compel, we have nevertheless concluded that the writs should not issue. While as a rule the writ of *mandamus* should issue to enforce a clear legal right, it is a discretionary writ and *may be withheld where its issuance will work confusion or lead to inequitable results.* In this case the original school districts proceeded to reorganize in the best of faith .. . . They have entered upon another school year. They have employed teachers, and schools are being conducted. The legislature is in session, and it may enact valid legislation to carry out the purpose which it attempted .. . . Should this be done, *the granting of the writ at this time would work most aggravating confusion.* It would result in the closing of the schools of these districts during the middle of the school year, the dismissal of the teachers therein employed, require the transportation of the pupils to the city school, and perhaps result in double taxation to the inhabitants of this territory. All of this would have to be undone should the legislature enact a valid law re-establishing the original school districts. *We think that the interest of the community affected will be better served by withholding the issuance of the writ at this time and permitting the school districts to function during the remainder of the school year as they are now doing.*

*Id.* at 608-609, 202 N.W. at 148 (emphasis added).

In *State ex rel. Milwaukee Sewerage Comm'n v. Milwaukee County Board of Supervisors*, 211 Wis. 412, 248 N.W. 454 (1933), the supreme court considered another case in which a party posed equitable arguments in opposition to a petition for a writ of mandamus despite the apparent satisfaction of the four legal prerequisites. By statute, the Milwaukee Sewerage Commission was "charged with the duty of maintaining, planning, constructing, and establishing a sewerage system." *Id.* at 412-413, 248 N.W. at 455. In carrying out that responsibility, the Commission had the authority to adopt a resolution stating the amount of funds needed for the sewers, file it with the county board, and " 'thereupon [the county board of supervisors] is required and directed' " to issue bonds for the funding. *Id.* at 413, 248 N.W. at 455 (citation omitted). When the county board declined to do so, the sewerage commission petitioned for mandamus. The county board responded that the funding would exceed the county tax levy in a way that "would be disastrous," that sale of the bonds would "seriously impair the ability" of the county to market other bonds, and that the sewer system was adequate so that "further development of the sewerage plant is not essential to the health interests." *Id.* at 414-415, 248 N.W. at 455-456. The county board asked the supreme court "to take judicial notice of the present financial crisis," in addition to the other facts set forth in the return to the petition, and to withhold the writ of mandamus "upon the ground that its issuance would work confusion and lead to inequitable results." *Id.* at 416, 248 N.W. at 456.

Analyzing *Horton*, the supreme court rejected the county's argument, explaining:

It was held [in *Horton*] that the interest of the community would be better served by withholding the writ and permitting the school districts to function during the remainder of the school year. The court stated: "We more readily come to this conclusion because the plaintiff in these actions is a private individual and brings the action as a taxpayer."

It is believed that the statement of the facts and the holding in this case will make evident the distinction between the situation there presented and that with which the court is confronted in this case. This is not a contest between a taxpayer and a public officer, but one affecting the legal relations of two governmental agencies. In the *Horton Case*, to deny [sic—grant] the writ would be to defeat the principal purpose of the law itself by closing schools in the middle of the year and otherwise disrupting an existing school system, and all because of the insistence of a taxpayer that the town' clerks carry out what strictly was their legal duty. Here there is no such matter involved. The statute has vested in the Sewerage District the complete power to plan, construct, and maintain sewers, and to call upon the county to issue bonds. It has given the county board no discretion to refuse to issue the bonds. The Sewerage District seeks the aid of this court to compel the county board to carry out its plain, legal duty and the plainly expressed intent of the statute. To refuse the aid of the court would be to defeat the purpose and intent of the law. To say that a court ought to decline its aid because under all the circumstances it thinks with the county board that the expenditure of a further sum for sewerage extension is unwise, or even disastrous financially, is in effect to claim for it the right to suspend, at least during the emergency, the operation of a plain, unambiguous legislative mandate. In our judgment this would not merely be an abuse of discretion, but

661

> a usurpation of legislative power that could not be defended upon any ground.

*Id.* at 417-418, 248 N.W. at 456-457. The court went on to comment that even in the face of what the county board claimed to be "other mandatory duties which the county board was quite as obligated to discharge as the one in question," the county board had shown neither "impossibility" nor "the manner in which this would work disastrously." *See id.* at 418-419, 248 N.W. at 457. Thus, the court concluded, the sewer commission was entitled to the writ of mandamus. *Id.* at 419, 248 N.W. at 457.

In this case, although Dr. Keane is a private party, he offers far more than the mere insistence that clerks carry out a technical duty. Further, although St. Francis Hospital also is a private party, its very existence as a health provider carries a public presence approximating that of many governmental entities. Accordingly, Dr. Keane's petition for mandamus is far more compelling than that presented in *Horton*, and yet, at the same time, the public implications of a hospital's work suggest the compelling basis on which the trial court could consider the equitable impact of mandamus on the board, staff, and patients of St. Francis Hospital. *See* 55 C.J.S. Mandamus § 15 (1948) ("In determining whether to issue mandamus, the court may consider the interests of third persons, and it will not as a general rule grant the writ where the rights of such persons, not parties, would be injuriously affected.").

Although certainly one could argue that reinstating Dr. Keane as chief of staff at St. Francis Hospital would not have produced the "most aggravating confusion" as that considered in *Horton, see Horton*, 185 Wis. 608-609, 202 N.W. at 148, it is quite clear that the trial court considered abundant and undisputed facts on

662

which it could reasonably base its conclusion that reinstating Dr. Keane would return him to "some sort of warfare" incompatible with the public interest. The record was replete with references to the warfare, any or all of which reasonably could have led the trial court to conclude that special reasons and equitable factors militated against mandamus. Without attempting anything near an exhaustive listing, we summarize a representative sampling from the record:

• — the minutes of the July 23, 1992 meeting of the St. Francis Board of Directors Executive Committee:

> Mr. Abdoo [Chairman of the Board] began by saying that he had asked Mr. Knight [Chief Executive Office of St. Francis] to call this meeting today. As members of this group know, the Board has been trying desperately to get Dr. Keane to fulfill his role as Chief of Staff. Mr. Abdoo said he thought some progress was being made after the meetings held with him; however, Dr. Keane apparently did not think so. It has gotten now to the point where a decision must be made. Mr. Knight has said to Mr. Abdoo that he has had it and finds that he can no longer work with Dr. Keane. Dr. Keane shows no willingness to work with the hospital leadership, which makes Mr. Knight less than fully effective.
>
> Mr. Abdoo said that it was his feeling that Mr. Knight is a good CEO and he would hate to see Mr. Knight leave the Hospital over this issue.. . .
> . . ..
>
> Mr. Knight stated that he is not willing to work with Dr. Keane any longer. Mr. Knight stated he has considered the alternatives and whichever alternative is chosen would be better for him personally than the current status at STFH.. . .
> . . ..

Sister Mary said that Dr. Keane's reaction is not towards Mr. Knight personally; it would be the same towards any administration that stands up to him on what is right. He would want removed any administrator who would not let him do whatever he wants to do. The hospital is fortunate in having a Chairman who has the guts to take this action and an Administrator willing to face this difficulty. She reported that the Felician Sisters[12] are totally in support of Mr. Knight.

"Sister Mary continued by saying that if we don't take this action now, we will do the Hospital a disservice...."

• — the July 23, 1992 letter to Dr. Keane from Richard Abdoo, Chairman, St. Francis Hospital Board of Directors:

[I]t is the conclusion of the Executive Committee of the Board of Directors and the Hospital President that you have failed to fulfill your responsibilities as President of the Medical/Dental Staff in that you have repeatedly failed to act in coordination and in cooperation with the Chief Executive Officer in all matters of mutual concern with the Hospital as required by . . . the Medical/Dental Staff Bylaws. In addition, you have failed to serve as a responsible representative of the Medical/Dental Staff to receive, understand and interpret the policies of the Board . . . to the Medical/Dental Staff as required by the Bylaws....

. . ..

. . . [Y]ou should be aware that the Committee does consider your conduct to be extremely disruptive to

---

[12] St. Francis Hospital, Inc., is affiliated with St. Francis Health Care, Inc., a corporate member organization sponsored by the Felician Sisters of the United States, Chicago Province.

patient care and of the nature and severity that would support the need to take action immediately in the best interests of patient care in the Hospital in the event you continue to exhibit this disruptive behavior."

• — the minutes of the August 5, 1992 special medical/dental staff meeting for the staff ["to hear directly from representatives of the Board of Directors the reason for their decision to remove the former Chief of Staff and to respond to any questions .. .."]:

> It was the Board's opinion . . . that there was not good cooperation between the CEO and the COS.. . . The Hospital could not continue to progress without this cooperation. Mr. Abdoo stressed how seriously the Board considered this issue. The lay Board members took it upon themselves to have additional meetings with Dr. Keane outside of the Hospital building. These meetings were pleasant but there were frank discussions expressing the Board's concern about the need for cooperation and suggestions made as to how things could improve. A similar series of meetings was held with Mark Knight again expressing the need for cooperation. Later, a meeting with both the CEO and the COS was held and the same concerns were expressed. Despite assurances from both and absolute confidence by the Board members that things would improve, things did not improve.
>
> . . ..
>
> Dr. P. Lahiri commented that the COS is a democratically elected office and the Board removed him in an autocratic manner and the Staff is kept ignorant as to the reasons. He felt the staff should be kept informed and that this issue should have been handled in a democratic manner. Dr. Lahiri questioned whether the Staff's future elections would

then just be a farce. Mr. Abdoo replied with an emphatic "No."

. . ..

Dr. Kulkarni said that as far as he knew, Dr. Keane had not done anything to jeopardize the interests of the hospital. And, in his opinion, unless these facts are made known, he saw no reason why Dr. Keane should not be reinstated.

. . ..

Dr. Malone continued by saying that if this Staff could persuade this Board to even rethink its decision, the result most likely would be that Board members would resign. And for physicians on this Staff, that would be the first step in the disintegration of St. Francis Hospital.. . .

. . ..

Mr. Abdoo said . . . [m]aybe the Board did not do the right thing; however, Mr. Abdoo said that he still believed that it did because the Hospital does need to continue to function. The Board could have continued to live with the COS and the Administration as it was but the Hospital could not have accomplished anything. This would have put the hospital in a constant state of turmoil. But after having tried repeatedly to work things out between the Administration, the Board and the COS—and realizing that those efforts failed—the Board felt that continuing that situation was worse than the divisiveness that we see at this meeting tonight.

• — the minutes of the September 1, 1992 special meeting of the medical/dental staff:

Dr. Redlin commented that "almost all of us can agree that the Board of Directors was, to say the very least, impolite when they failed to discuss this matter with the Medical Staff before removing our

chief. Based on that and the fact that they failed to provide us with reasonable justification, I would move that we condemn their action." After some discussion, Dr. Chung [the new chief of staff] repeated that the motion being considered was the one to condemn the Board's dismissal of [Dr. Keane]
.. . .

. . ..

Dr. Dean Miller stated that he respects the Board's decision and recognizes that physicians are able to practice because the Board of Directors gives physicians permission to practice. He said that "In thirty years there has never been a vote like this before in this hospital where the staff has rebelled against the Board. The Board is the authority." He also stated his opinion that the Board has the right to dismiss the Chief of Staff if there is no cooperation.

• — the September 2, 1992 memo to the St. Francis medical/dental staff from Dr. Chung:

The results of the motions made at Tuesday evening's Special Medical/Dental Staff meeting are now in.

The first motion was "That the action of the Board of Directors of St. Francis Hospital in removing the Chief of Staff from office, be condemned." This motion passed.

The second motion was "That the Chief of Staff, Dr. S. Keane, be reinstated based upon the failure of the Governing Board to correctly remove him pursuant to Article XIII, Section IV, of the Medical/Dental Staff Bylaws, Rules & Regulations of St. Francis Hospital." This motion failed to pass.

667

> The third motion was "Although we are concerned that the Board of Directors did not provide advance notification to the Medical/Dental Staff of St. Francis Hospital of its intention to remove the Chief of Staff from office, we nonetheless support the final decision of the Board in this matter." This motion also passed.
>
> I have shared these votes with the Board of Directors and they will be discussed at the next Board meeting, which will be held at the end of this month.
>
> I ask each member of the Medical Staff now—regardless of your position on these issues—to pull together to end any devisiveness [sic] so that we can continue to ensure that St. Francis Hospital is a strong and viable hospital.
>
> Thank you.

Viewing the "community affected," *see Horton*, 185 Wis. at 609, 202 N.W. at 148—St. Francis Hospital, its patients, staff, board, and the public they serve—the trial court exercised reasonable discretion in denying the writ on equitable grounds. Although the trial court did not specify which of the many underlying facts formed the foundation for its conclusion, we are satisfied that the undisputed record supports the trial court's discretionary determination. *See Galuska v. Kornwolf*, 142 Wis. 2d 733, 419 N.W.2d 307 (Ct. App. 1987) (in mandamus action, reviewing court is obliged to uphold the discretionary decision of the trial court if it can conclude *ab initio* that there are facts in the

record that would support the trial court's decision had discretion been exercised on the basis of those facts). [13]

We are mindful of the apparent paradox that leaves Dr. Keane as both the victor and the vanquished. He has prevailed in his legal arguments and yet he is not to be reinstated by our decision. We understand his frustration. As the supreme court stated many years ago:

> [W]here a person has been wrongfully ousted from his office and another installed therein the former is entitled to an adequate remedy for redress. The public is likewise interested and, in such circumstances, a remedy which merely decides the right

---

[13] Moreover, we note that the trial court's exercise of discretion based on equitable considerations was *not* connected to or dependent on its erroneous conclusions regarding Dr. Keane's rights. As we recently explained, "While the issuance of a writ of *mandamus* lies within the discretion of the circuit court, the exercise of the court's discretion under a mistaken view of the law is an erroneous exercise of discretion." *Schaefer v. Potosi Village Bd.*, 177 Wis. 2d 287, 292, 501 N.W.2d 901, 903 (Ct. App. 1993). Here, however, the trial court's exercise of discretion on equitable grounds was not "under" or based on "a mistaken view of the law." Instead, the trial court's equitable determination was clearly and explicitly stated separately from the court's other legal conclusions regarding the legal criteria for *mandamus*. Thus, although the trial court had arrived at "a mistaken view of the law," its equitable conclusion was not "under" that view, *see id.*, or based "on an erroneous view," *State ex rel. Althouse v. City of Madison*, 79 Wis. 2d 97, 106, 255 N.W.2d 449, 453 (1977), or "predicated" on an erroneous legal conclusion, *see State v. Hutnik*, 39 Wis. 2d 754, 764, 159 N.W.2d 733, 738 (1968). It was an independent, discretionary determination, the reasonableness of which was not apparently influenced or affected by the trial court's preceding, erroneous legal conclusions.

but does not restore possession is not an adequate remedy[.]

*State ex rel. Hayden*, 151 Wis. at 24, 138 N.W. at 80. Thus, we carefully caution that such a paradox should be encountered only in the rarest of circumstances lest those who would improperly remove individuals from offices be allowed to get their way through their misconduct. Nevertheless, given the repeated direction that courts must consider not only the four legal prerequisites but also the equitable considerations that may exist by virtue of special circumstances, we are not at liberty to ignore the trial court's proper consideration of the equitable factors in this case. Given the abundant and undisputed factual record of the St. Francis warfare, we cannot say that the trial court improperly exercised its discretion in denying mandamus.

Therefore, although we conclude that the trial court erred in its assessment of Dr. Keane's clear legal rights and St. Francis Hospital's corresponding duty, and although the equitable arguments and public interests may have been compelling for Dr. Keane as well as for St. Francis, we conclude that the trial court appropriately exercised discretion in concluding that "special reasons" existed rendering resort "to the remedy, under the circumstances, inequitable." *See Neu*, 96 Wis. at 493, 71 N.W. at 881. Accordingly, the judgment denying mandamus is affirmed.

*By the Court.*—Judgment affirmed.